**Midwest Contractors Equipment Co., Inc., Plaintiff-Appellant, v. Bituminous Casualty Corporation, Defendant-Appellee.**

**Gen. No. 53,392.**

First District, Second Division.

June 17, 1969.

Kralovec, Sweeney, Marquard & Scoby, of Chicago (Edward V. Scoby, of counsel), for appellant.

Doyle, Berdelle & Tarpey, of Chicago (Leo M. Tarpey, Jr., of counsel), for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

This was an action for declaratory judgment brought by Midwest Contractors Equipment Company, Inc., (hereinafter referred to as "Midwest") against Bituminous Casualty Corporation (hereinafter referred to as "Bituminous") seeking a declaration that Midwest was an "insured" within the terms of an automobile insurance policy issued by Bituminous to Al Cohn, d/b/a Alco Steel Service (hereinafter referred to as "Alco"). The case was tried without a jury; the trial court found that Midwest was not entitled to coverage under the policy and entered judgment in favor of Bituminous. Midwest appeals.

This action arose out of a judgment which had been entered against Midwest in an action brought by John Hedge for injuries sustained when Hedge was struck in the head by the handle of a boom hoist hand winch. Alco owned a flatbed truck on which was mounted the boom hoist. The hoist consisted of two steel pipes joined at the top forming an "A" frame. Loads were raised and lowered by means of a cable running from the transmission of the truck, under the cab, and up and over the top point of the "A" frame. A hand winch on the side of the truck could be employed in increasing or decreasing the angle of the "A" frame as it extended over the rear of the truck.

In November 1960 Cohn loaned the truck to Richard Nardi, president of State Wrecking Company (hereinafter referred to as "State Wrecking"), which was then engaged in a wrecking job in Chicago. The Alco truck was

to be used for tight places where a larger crane could not be operated. After State Wrecking completed the wrecking job, the Alco truck was taken to the State Wrecking yard in Chicago, with the knowledge and consent of Cohn.

In March 1961 the drum shaft of a crane owned by State Wrecking was in need of repairs. The drum was removed from the crane and taken to Midwest in a State Wrecking dump truck where the repairs were to be made. The repairs were completed by Midwest in April 1961 and the drum shaft was picked up by a State Wrecking dump truck and returned to the State Wrecking yard.

On April 6, 1961, Arlie Abbott, a Midwest mechanic, was sent to State Wrecking to make the necessary connections of the drum shaft to the State Wrecking crane. A stipulation was entered between the parties that Abbott had testified at the Hedge trial that the drum shaft, which weighed approximately 2,000 pounds, was removed from the State Wrecking dump truck by means of the Alco truck hoist by two State Wrecking employees, one of whom was John Hedge. The drum shaft then remained suspended on the Alco truck hoist until the State Wrecking crane was made ready to receive the drum. John Hedge then backed the Alco truck up against the crane and, by means of the hoist, lowered the drum near the position it was to occupy in the crane. However, it developed that the drum should have been positioned another foot further back into the crane, but the Alco truck was already backed against the crane. Hedge stated that he could reposition the drum by lowering the "A" frame to a different position by means of the hand winch. Hedge then knocked loose the bolt securing the gears of the winch, thereby freeing the gears; the weight of the drum shaft suspended on the hoist caused the handle of the winch to spin and strike Hedge in the head. The stipulation further recited that Abbott's only purpose on the site was to make the necessary connections from the

drum shaft to the crane after it had been positioned in the crane, and that he neither gave orders to any of the men at the scene nor supervised any of the work. The stipulation was admitted into evidence over objection of Midwest that it was not relevant to the issues before the court. At the Hedge trial, Hedge claimed that Abbott told him to use the hand winch to lower the "A" frame so that the drum shaft could be properly positioned in the State Wrecking crane. Abbott, on the other hand, stated that he did not tell Hedge to use the hand winch, but in fact told Hedge not to do so.

At the time of the accident, the Alco truck was insured by Bituminous through the policy of insurance under which Midwest now seeks recovery. Hedge thereafter filed suit against Midwest and Alco. Bituminous defended Alco in the suit, but refused to defend Midwest when requested by Midwest to do so. The jury returned a verdict in favor of Hedge and against Midwest and a verdict against Hedge and in favor of Alco, and judgments were entered accordingly. Midwest subsequently satisfied the judgment entered against it and thereafter filed this action for a declaration that Midwest was within the coverage of Alco's policy issued by Bituminous, on the ground that State Wrecking had implied authority from Alco to allow Midwest to use the Alco truck. Bituminous answered that Midwest was neither using the Alco truck at the time of the accident nor did it have permission from Alco to use it; and that the Midwest action was further barred by several exclusionary provisions of the Alco policy, to which Midwest replied that Bituminous' refusal to defend the Hedge action on the demand of Midwest constituted a waiver of Bituminous' right to rely on the exclusionary provisions contained in the policy.

The trial court, ruling in favor of Bituminous, held that Midwest was not using the Alco truck at the time of the accident, that Midwest did not have permission from Alco to use the truck, and that the truck was not being used as a truck when Hedge was injured.

■ Midwest maintains that the jury's verdict and the judgment entered in the Hedge action are dispositive of all facts and circumstances of the Hedge accident which in turn become the operative facts in this action. Midwest argues that, by its verdict, the jury found that Midwest, through its employee Abbott, was using the Alco truck at the time of the accident. While we agree that the verdict in the Hedge case is dispositive of the issue of negligence on the part of Midwest, we do not agree that it is dispositive of the issue presented here, namely, whether Midwest was a "user" of the Alco truck at the time of the accident so as to fall within the coverage provisions of the Alco policy. The case was submitted to the Hedge jury on two theories, first, that Midwest negligently and carelessly failed to warn Hedge of defects in the boom hoist of which Midwest had knowledge or in the exercise of reasonable care should have had knowledge, and second, that Midwest carelessly and negligently directed Hedge to use the Alco hoist in order to lift the drum shaft when Midwest knew or should have known that the hoist was in a defective condition. The Hedge jury was not presented with the issue of whether Midwest was the user of the Alco truck at the time of the accident. Because the jury found that Midwest was guilty of negligence by either failing to warn Hedge of defects or of directing him to use the hoist, or both, it does not follow that the jury found that Midwest was the user of the Alco truck. The issue of whether Midwest was the user of the Alco truck at the time of the accident was before the court below and the stipulation of Arlie Abbott's testimony was relevant thereto. Midwest's witness, Abbott, testified at the Hedge trial that he was not using the Alco truck at the time of the accident; Midwest should not now be heard to deny the alleged nonuser of the truck. Higgins v. Atchison, T. & S. F. Ry. Co., 57 Ill App2d 254, 260–261, 205 NE2d 648. Furthermore, even under Hedge's theory of the case Midwest was not shown to have been a user of the Alco truck because it was al-

leged that Abbott merely directed Hedge to use the hoist. Midwest was not the user of the Alco truck at the time of the Hedge accident so as to fall within the coverage of the Alco policy issued by Bituminous.

■■ Assuming, arguendo, that Midwest was in fact using the Alco truck at the time of the Hedge accident, the Alco policy would not afford coverage to Midwest. The policy protects the named insured (here, Alco) as well as those using the vehicle with permission of the insured (here, State Wrecking). There is no evidence that Cohn, d/b/a Alco, knew or in any way permitted Midwest to use the truck and, consequently, Midwest cannot claim coverage under the Alco policy. The argument raised by Midwest that it had implied permission from Alco to use the truck is unavailing. Permission by the named insured to a permittee to use a vehicle does not authorize the permittee to allow a third party to use the vehicle. See Hays v. Country Mut. Ins. Co., 28 Ill2d 601, 606, 192 NE2d 855.

■■ A third reason Midwest is not entitled to coverage under the Alco policy is that the policy excludes employees of the insured from coverage. Hedge was employed by State Wrecking which, in turn, fell within the coverage of the policy by virtue of the express permission from Alco to use the truck. The "insured" in a policy is not limited to the insured named in the policy, but applies to "anyone who is insured under the policy." General Acc. Fire & Life Assur. Corp. v. Brown, 35 Ill App2d 43, 52, 181 NE2d 191. Since State Wrecking was a permittee and consequently one of those "insured under the policy," its employee Hedge was excluded from coverage since he was injured in the course of his employment.

■■ Finally, Midwest's contention that Bituminous waived its right to rely on the exclusionary provisions of the policy by its refusal to defend upon Midwest's demand is unavailing. An insurer is under a duty to

defend a suit against its insured where the complaint in that action states facts which fall within the coverage of the policy; where the complaint fails to bring the case within the policy coverage, the insurer may rightfully decline to defend. See Sims v. Illinois Nat. Cas. Co. of Springfield, 43 Ill App2d 184, 189–190, 193 NE2d 123. An examination of the Hedge complaint reveals no relationship between Alco and Midwest in that it lacks an allegation that Midwest was using the Alco truck with the permission of Alco. See Heape v. Bituminous Cas. Co., 36 Ill App2d 131, 136, 182 NE2d 918. Bituminous here was justified in refusing Midwest's demand that it defend Midwest in the Hedge action and consequently has not waived its right to rely upon the provisions of the Alco policy.

For these reasons the judgment is affirmed.

Judgment affirmed.

LYONS, P. J. and McCORMICK, J., concur.