LORETTO WASMUND, Plaintiff, v. METROPOLITAN SANITARY DIS-
TRICT OF GREATER CHICAGO *et al.*, Defendants (The Village of Mt.
Prospect Lions Club, Third-Party Plaintiff-Appellant, v. Robert C. Look,
Third-Party Defendant-Appellee).

First District (1st Division)   No. 84—896

Opinion filed June 17, 1985.—Rehearing denied September 11, 1985.

Jerome H. Torshen, Ltd., and Garretson & Santora, of Chicago (Jerome H. Torshen, Abigail K. Spreyer and Mark J. McCombs, of counsel), for appellant.

Beverly, Pause, Duffy & O'Malley, of Chicago (James R. Patterson, Daniel C. Truesdale, and Samuel T. Klaskin, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

This is an appeal from an order of the trial court dismissing an action for contribution by the third-party plaintiff, Village of Mt. Prospect Lions Club (hereinafter Lions Club), against the third-party defendant, Robert Look. The sole issue presented for review is whether a covenant not to sue entered into by Look was made in good faith so as to discharge him from liability in the contribution action.

On July 4, 1981, plaintiff, Loretto Wasmund, was a passenger in an automobile she owned when it was involved in a one-car accident. Third-party defendant, Robert Look was the driver of the car. Plaintiff and Look had known each other prior to the accident and were married sometime after its occurrence. The accident occurred when Look was attempting to park plaintiff's car near the site of a carnival sponsored by the third-party plaintiff, Lions Club. While parking the vehicle, Look hit a raised manhole, causing injury to plaintiff. The only insurance coverage for Look's liability to plaintiff was under plaintiff's own policy of automobile insurance. Prior to suit, plaintiff's insurer settled plaintiff's claim against Look for $7,000 and obtained from plaintiff a covenant not to sue Look. Plaintiff then filed an action against, *inter alia*, the Lions Club seeking $75,000 in damages. Plaintiff's complaint charged the Lions Club with negligence in concealing a manhole and then directing the Look-driven vehicle into the

parking aisle where this concealed manhole existed.

Thereafter, the Lions Club filed a third-party action for contribution against Look. The trial court dismissed the action and the Lions Club appeals. The Lions Club contends that plaintiff's covenant not to sue Look was not made in good faith because the payment plaintiff received from Look did not reflect an equitable share of Look's responsibility for plaintiff's injuries, that it was a collusive settlement, and that Look gave no consideration for the covenant not to sue.

The Illinois Contribution Act (Ill. Rev. Stat. 1983, ch. 70, pars. 301 through 305) creates a right of contribution among joint tortfeasors in favor of a tortfeasor who has paid more than its *pro rata* share of the common liability. (Ill. Rev. Stat. 1983, ch. 70, pars. 302(a), (b).) The *pro rata* share of each tortfeasor is determined in accord with his relative culpability. (Ill. Rev. Stat. 1983, ch. 70, par. 303.) The Act also establishes that a tortfeasor who settles with a claimant in good faith is discharged from all liability for any contribution to any other tortfeasor. Ill. Rev. Stat. 1983, ch. 70, pars. 302(c), (d).

■■ ■ The Lions Club initially contends that the settlement with Look was not in good faith because it did not reflect payment for Look's equitable share of liability. Settlement agreements, such as a release agreement or the covenant not to sue entered into by plaintiff and Look here, are supported by a public policy which favors the peaceful and voluntary resolution of claims. (*Meyer v. Murray* (1979), 70 Ill. App. 3d 106, 387 N.E.2d 878.) Where there is a resolution of a claim by virtue of a release or covenant, a presumption of validity is created. (*McComb v. Seestadt* (1981), 93 Ill. App. 3d 705, 417 N.E.2d 705.) Thereafter, the party challenging the release carries the burden of proving any assertion of invalidity. (*Hudson v. Thies* (1962), 35 Ill. App. 2d 189, 182 N.E.2d 760.) The evidence must be "clear and convincing" inasmuch as the law favors compromise. *Martin v. Po-Jo, Inc.* (1969), 104 Ill. App. 2d 462, 244 N.E.2d 851.

■ In the instant case, Look was released from liability for plaintiff's injuries pursuant to a covenant not to sue entered into by plaintiff and Look in the amount of $7,000. The $7,000 payment was made for and on behalf of Look by plaintiff's insurer under her policy. No evidence was presented to the trial court of an unreasonably low settlement based upon relative culpability, any collusion between plaintiff and Look or of undue prejudice to the nonsettling parties. The Lions Club, therefore, has not met its burden of proving the invalidity of the covenant not to sue entered into by the parties here.

The intent of section 302 of the Contribution Act (Ill. Rev. Stat.

1983, ch. 70, par. 302) is clear. Where an alleged joint tortfeasor, prior to a judicial determination of his liability, in good faith settles the claim against him, he is discharged from further liability in a contribution action. We note, however, that at the time the Lions Club filed its third-party action for contribution against Look, they allege they did so without notice of plaintiff's covenant not to sue Look. Thereafter, the court found that the covenant was made in good faith and dismissed the Lions Club action with prejudice. Prior to its ruling, the court was not advised that all payments to plaintiff were made under her own insurance policy or that plaintiff was claiming permanent injury. No hearing in the trial court was held, therefore, specifically on the issue of whether the settlement was entered into in good faith.

We recognize that it would be helpful to determine the issue of good faith of the settlement before the tort action proceeds to trial. That determination would assist the parties both in shaping their trial strategy and in entering into possible further settlement negotiations. Without a determination on the good faith issue, the settling tortfeasor could later be deprived of the benefit of his bargain with plaintiff by being held liable in a contribution action for an amount more than his settlement amount. Since the Lions Club here alleged it was without notice of the covenant not to sue entered into by plaintiff and Look, the issue of good faith was not raised until trial commenced. It is suggested that the provisions of section 2 of the Contribution Act (Ill. Rev. Stat. 1983, ch. 70, par. 302) might be re-examined by the Illinois Legislature as they relate to the question of notice to be given the parties after a settlement has been entered into by an alleged joint tortfeasor and with regard to a pretrial determination of the good-faith issue.

Neither party here has cited, nor has our research revealed, any Illinois case law specifically defining "good faith" under the Illinois Contribution Act. Both parties rely on the California case of *River Garden Farms, Inc. v. Superior Court* (1972), 26 Cal. App. 3d 986, 103 Cal. Rptr. 498. While it was not necessary under the facts of that case for the court to make a determination of a good- or bad-faith settlement, *River Garden* did address some of the policy issues in interpretation of good- and bad-faith settlements:

> "If the good faith clause demands equitable sharing as fixed by a jury verdict which has not yet taken place, the parties cannot negotiate safely, and cannot accomplish settlement with a fair assurance of finality. All involved in the personal injury settlement business are aware of its large imponderables—the risk of

victory or defeat at the jury's hands, the risk of a high or low verdict, the unknown strengths and weaknesses of defenses, the inexact appraisal of damage elements, the defendant's solvency and the extent of insurance coverage. In advance of a jury verdict, most cases permit only a rough assessment of value. When one tortfeasor chooses to settle and another chooses to litigate, inequality in the ultimate cost does not signalize bad faith.

\* \* \*

\*\*\*[T]he good faith clause should not invalidate a settlement within a reasonable range of the settlor's fair share \*\*\*. \*\*\* When testing the good faith of a settlement figure, a court may enlist the guidance of the judge's personal experience \*\*\*. \*\*\* Good or bad faith is a question of fact in each case." 26 Cal. App. 3d 986, 997-98, 103 Cal. Rptr. 498, 506-07.

■ In the instant case, we conclude that the trial court was within its discretion in finding the settlement to be in good faith. There has been no jury verdict indicating the relative culpability of each tortfeasor. The only evidence presented of Look's relative culpability was the statement by the Lions Club that Look was primarily liable for plaintiff's injuries. The trial court, however, made no finding on the issue, and the record reveals no evidence presented by the Lions Club that the $7,000 settlement figure is not within the range of relative fault attributable to Look. Although the sum paid may be disproportionate to the sum prayed for in the complaint, it is not out of proportion to what the trial court could have considered the probable recovery of plaintiff. The trial court was not required to ignore its own experience, since good or bad faith is a question of fact in each case. See, *e.g.*, *River Garden Farms, Inc. v. Superior Court* (1973), 26 Cal. App. 3d 986, 103 Cal. Rptr. 498.

■ The Lions Club also asserts that the covenant between plaintiff and Look was collusive. Specifically, they contend that collusion is present because the relationship between Look and plaintiff was that of husband and wife. We note that the record indicates that Look and plaintiff were not married either at the time of the accident or at the time of the settlement, but, in fact, were married at some later date. We do not believe that the fact that the two were friends is sufficient, without more, to taint the settlement with an indicia of collusion. See, *e.g.*, *Fuquay v. General Motors Corp.* (N.D. Fla. 1981), 518 F. Supp. 1065, 1068-69.

■ Finally, the Lions Club contends that Look's release was not in good faith because it was not supported by consideration. The Li-

ons Club asserts that because the settlement amount was paid by plaintiff's insurer under plaintiff's own insurance policy, and since Look did not pay the premiums on the policy, there was inadequate consideration to support its release. Look responds that plaintiff's insurer was legally obligated to defend Look regardless of the fact that he did not pay the premiums on the policy and that the settlement amount paid by plaintiff's insurer on his behalf constituted adequate consideration.

The insurer under a policy of insurance has a duty to provide coverage and a defense for additional insureds. The "insured" in a policy is not limited to the insured named in the policy, but applies to "anyone who is insured under the policy." (*Midwest Contractors Equipment Co. v. Bituminous Casualty Corp.* (1969), 112 Ill. App. 2d 134, 140, 251 N.E.2d 349, 352.) An insurer is under a duty to defend a suit against its insured where the complaint in the action states facts which fall within or potentially within the coverage of the policy. (*Conway v. Country Casualty Insurance Co.* (1982), 92 Ill. 2d 388, 442 N.E.2d 245; *Clemmons v. Travelers Insurance Co.* (1981), 88 Ill. 2d 469, 430 N.E.2d 1104.) Where the language of the policy extends coverage to a permissive user, the insurer has a duty to defend the additional insured. *Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335.

The record in the case at bar indicates that under the terms of plaintiff's policy, Look was a permissive user of her vehicle, and her insurer was obligated to represent and protect the possible liability of Look arising out of this occurrence. (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335.) Further, it has been held that payment under an insured's own insurance policy is sufficient consideration for the insured's execution of a release of liability. (*Ogren v. Graves* (1976), 39 Ill. App. 3d 620, 350 N.E.2d 249.) Accordingly, the $7,000 paid to plaintiff under her insurance policy, for and on behalf of Look's possible liability, was adequate consideration for plaintiff's covenant not to sue.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

BUCKLEY and O'CONNOR, JJ., concur.