LaVERNE C. McKANNA, Indiv. and as Special Adm'r of the Estate of John W. McKanna, Deceased, *et al.*, Plaintiffs-Appellees, v. DUO-FAST CORPORATION, Defendant and Counterplaintiff and Third–Party Plaintiff-Appellant (Carp Construction Company *et al.*, Defendants and Counter-defendants-Appellees; McDonough Plumbing & Heating, Inc., d/b/a Mc-Donough Mechanical Service Company, Third–Party Defendant-Appellant).

First District (2nd Division)   No. 86—2248

Opinion filed September 15, 1987.—Rehearing denied October 27, 1987.

520

Aries, Hoyt & Taden, of Chicago (Harvey J. Cohen and Merrill C. Hoyt, of counsel), for appellant Duo-Fast Corporation.

Fredrick J. Fraterrigo and Scott D. Hammer, both of Fraterrigo, Best & Beranek, of Chicago, for appellee North Shore Steel Erectors Company.

Francis P. Cuisinier and Matthew J. Egan, both of Law Offices of Roderick J. Bergin, of Chicago, for appellee Carp Construction Company.

William J. Burke and Linda A. Leonetti, both of James Thomas Demos & Associates, Ltd., of Chicago, for other appellees.

JUSTICE HARTMAN delivered the opinion of the court:

A jury found defendant Duo-Fast Corporation (Duo-Fast) guilty of having violated the Illinois Structural Work Act (Ill. Rev. Stat. 1979, ch. 48, par. 60), and of common law negligence, which allegedly caused injuries resulting in the death of plaintiffs' decedent, John W. McKanna (McKanna). Duo-Fast appeals from the pretrial dismissal of its codefendants and counterdefendants, Carp Construction Company (Carp) and North Shore Steel Erectors Company (North Shore), and from the denial of its post-trial motion for judgment *n.o.v.* or for a new trial.

The issues presented on appeal include whether: (1) the circuit court erred in dismissing defendants and counterdefendants Carp and North Shore after finding that they had entered into a good-faith settlement with plaintiffs; (2) the circuit court erred in admitting evidence of the size of Duo-Fast's plant; (3) Duo-Fast was entitled to a directed verdict or judgment *n.o.v.* on plaintiffs' asserted failure to prove Duo-Fast's negligence or violation of the Structural Work Act as the proximate cause of McKanna's death; (4) McKanna's accident was covered by the Structural Work Act; and (5) the circuit court erred in allowing plaintiffs' expert to testify.

On October 17, 1980, McKanna, a pipefitter for 38 years then em-

ployed by third-party defendant McDonough Plumbing and Heating, Inc. (McDonough), and his partner, Robert Wollard, Jr., went to the Duo-Fast plant to perform warranty repair work on the air-conditioning system. The system upon which the men worked was installed partly within the building and partly upon its roof. The condensing units located on the roof were accessible via two routes: by a permanently affixed wall ladder which ran 17 feet from the floor of the boiler room to a ceiling hatch giving access to the roof; or by a combination stairway and ladder from the compressor room. The boiler room ladder, consisting of 17 steel rungs, mounted 12 inches apart, and 5 inches from the wall, possessed several alleged defects: (1) the rungs were set too close to the wall (5 inches rather than 7 inches) according to American National Safety Institute (ANSI) standards adopted by OSHA; (2) an I-beam near the top of the ladder violated ANSI/OSHA standards and interfered with placement of a user's foot on the second and fourth rungs from the top of the ladder; (3) the steel rungs of the ladder did not have a nonskid surface but were merely covered with worn paint; and (4) the ladder ended 15 or 16 inches below the roof hatch, violating ANSI/OSHA standards which required that the ladder extend to the roof line. The other means of roof access was by way of a stairway which led to an 8-foot-high wall ladder to the roof over the compressor room.

The door leading to the boiler room and the boiler room roof hatch were to have been locked at all times, according to the evidence. Duo-Fast had a rule that anyone going to the roof was to use the compressor room stairway and ladder and no one was to use the boiler room ladder; however, there was no sign to this effect on the boiler room ladder and there were no written instructions given to outside contractors or personnel. Duo-Fast's maintenance foreman was given the responsibility to inform such outsiders of the rule.

Wollard asked a Duo-Fast guard to unlock the boiler room and the boiler room roof hatch shortly after he and McKanna arrived at Duo-Fast at 8 a.m. on October 17, 1980. Wollard had used the boiler room hatch on previous visits to Duo-Fast and, although aware of the compressor room access route, he had never been instructed to use it; nor had he been directed not to use the boiler room ladder. Heavy rains that morning had left standing water near the boiler room hatch and Wollard testified at trial that his shoes had been wet.

Shortly before quitting time, at 4 p.m., Wollard and McKanna began finishing up their work. Wollard carried some of his tools down the ladder to the boiler room. When he returned to the roof, he saw McKanna carrying a piece of air-conditioning equipment back towards

the boiler room hatch. McKanna told him that he was going to see if the compressor room hatch was open; Wollard told McKanna that he did not think it was. Wollard then descended to the boiler room with the remainder of the tools and waited for McKanna for 5 to 10 minutes. Wollard saw McKanna on the roof through the boiler room hatch; saw him place his left hand on the hatch; and saw him turn around in preparation of descending the ladder. Wollard then bent over to move his tools away from the base of the ladder. While bent over, Wollard, through peripheral vision, saw McKanna fall to the boiler room floor. McKanna died 21 hours later.

The medical examiner's autopsy disclosed that McKanna had died from multiple injuries to the skull and brain caused by a fall from a height. The autopsy further revealed no evidence of alcohol or drugs in McKanna's system and no evidence of any abnormality of the heart.

On March 13, 1981, McKanna's widow, individually and as special administrator of the estate, filed a three-count complaint against Duo-Fast: count I was for wrongful death; count II was a survival action; and count III was for violation of the Structural Work Act. Following Duo-Fast's motion to strike, plaintiff, joined by other survivors of decedent, filed a first amended complaint on September 28, 1981. Subsequently, on July 30, 1982, plaintiffs filed a second amended complaint against Duo-Fast and added as defendants Carp Construction Company, which in 1966 built the area of the plant where McKanna was killed, and North Shore Steel Erectors Company, the manufacturer of the prefabricated boiler room ladder. This complaint reasserted the three counts against Duo-Fast and articulated a survival action and a wrongful death action against Carp and North Shore, alleging that they designed and manufactured or ordered, purchased and installed the dangerous and defective boiler room ladder.

On January 4, 1985, Carp filed a counterclaim for contribution against North Shore and Duo-Fast. Duo-Fast thereafter filed a counterclaim for contribution and indemnity against Carp and North Shore on February 6, 1985. On February 11, 1985, North Shore filed a motion for summary judgment contending that Plaintiff's cause against it was time barred by the applicable statute of repose. (Ill. Rev. Stat. 1981, ch. 110, par. 13—214.) Carp subsequently moved to dismiss, based upon the same statute of repose argument. On April 23, 1985, the circuit court denied Carp's motion to dismiss and denied North Shore's motion for summary judgment on July 1, 1985.

North Shore filed a third-party action against McKanna's employer, McDonough, on September 24, 1985. This action was severed

from the others on October 21, 1985, due to the proximity of trial. Thereafter, Carp, on February 18, 1986, and Duo-Fast, on March 6, 1986, also filed third-party complaints against McDonough.

Following an attempt to settle the case in open court on April 11, 1986, which apparently was to have been the first day of trial, plaintiffs settled with Carp for $15,000 and North Shore for $10,000. All parties were then present or represented by counsel. An oral motion to dismiss Carp and North Shore was then granted, after extensive argument by all counsel. Before the settlement conference in court that day, no prior notice of the settlement or motion to dismiss was given to Duo-Fast, which contended that the settlements were not made in good faith.

The action proceeded only against Duo-Fast in a jury trial the next day, during which plaintiffs filed a third amended complaint against Duo-Fast, which asserted wilful and negligent violations of the Structural Work Act (counts I & II) and common law negligence (counts III & IV). The jury returned a verdict in favor of plaintiffs on both negligence and under the Structural Work Act and assessed damages of $550,000 under both, thereafter reduced by the $25,000 settlement amount. The jury also answered "yes" to a special interrogatory: "Was the defendant, Duo-Fast Corporation, a party having charge of the work being done on the building on October 17, 1980?" Duo-Fast moved for a new trial and for judgment notwithstanding the verdict, both of which motions were denied. Duo-Fast appeals.

I

■ Preliminarily, we note that appellant, Duo-Fast, in contravention of Supreme Court Rule 342(a) (107 Ill. 2d R. 342(a)), has failed to attach an appendix to its appellate brief including required copies of its notice of appeal, the orders appealed from, and an index to the appellate record. Supreme court rules require the filing of briefs in conformance with those rules in order to enable the reviewing courts to consider properly the issues raised on appeal. Failure to follow those rules has resulted in refusal by the courts to consider the merits of the appeals. (See, *e.g.*, *Torres v. Board of Election Commissioners* (1986), 142 Ill. App. 3d 955, 959, 492 N.E.2d 539.) In the interest of judicial economy in this case, however, we elect to consider the issues raised on their merits.

II

■■ ■ Duo-Fast initially asserts that the circuit court erred in dismissing Carp and North Shore from the action because the settle-

ments between them and plaintiffs were not made in good faith. Duo-Fast further asserts that the circuit court erred in not holding an evidentiary hearing on the settlement issue.

The public policy of this State favors the peaceful and voluntary resolution of disputes through settlement agreements; any assertion that such an agreement is invalid must be proved by clear and convincing evidence. (*O'Connor v. Pinto Trucking Service, Inc.* (1986), 149 Ill. App. 3d 911, 915, 501 N.E.2d 263; *Wasmund v. Metropolitan Sanitary District* (1985), 135 Ill. App. 3d 926, 928, 482 N.E.2d 351.) Parties who settle in good faith are protected from contribution actions by section 2 of the Contribution Act (Ill. Rev. Stat. 1985, ch. 70, par. 302) in order to foster certainty and encourage good-faith settlements. *O'Connor v. Pinto Trucking Service, Inc.* (1986), 149 Ill. App. 3d 911, 916, 501 N.E.2d 263.

■■■ Section 2 of the Contribution Act creates a right of contribution between joint tortfeasors in favor of any who have paid more than their *pro rata* share as premised upon individual culpability. (*O'Connor v. Pinto Trucking Service, Inc.* (1986), 149 Ill. App. 3d 911, 916, 501 N.E.2d 263.) An alleged tortfeasor who settles in good faith, however, is discharged from contribution liability. (Ill. Rev. Stat. 1985, ch. 70, par. 302(d); *O'Connor v. Pinto Trucking Service, Inc.* (1986), 149 Ill. App. 3d 911, 916, 501 N.E.2d 263; *Wasmund v. Metropolitan Sanitary District* (1985), 135 Ill. App. 3d 926, 930, 482 N.E.2d 351.) An ensuing jury verdict against a remaining defendant or defendants is not necessarily a fair measure of the good faith of a settlement, nor is the fact that a settlement agreement is advantageous to a party an indicium of bad faith. (*O'Connor v. Pinto Trucking Service, Inc.* (1986), 149 Ill. App. 3d 911, 916, 501 N.E.2d 263.) In weighing the apparent disproportionality of a settlement amount in relation to the *ad damnum* of the complaint, the court must consider both the probable recovery and the possibility of an unexpected result. (*O'Connor v. Pinto Trucking Service, Inc.* (1986), 149 Ill. App. 3d 911, 916, 501 N.E.2d 263; *Wasmund v. Metropolitan Sanitary District* (1985), 135 Ill. App. 3d 926, 930, 482 N.E.2d 351.) The relationship between the amount of a settlement and the damages sought by the complaint is but one factor for consideration, since damages are often speculative and the probability of liability is frequently uncertain. Accordingly, the amount of a settlement legitimately may be quite different from the amount of damages sought or actually assessed at trial. *O'Connor v. Pinto Trucking Service, Inc.* (1986), 149 Ill. App. 3d 911, 916, 501 N.E.2d 263.

In the case *sub judice*, Carp and North Shore settled for amounts

considerably different from the amount of the eventual jury verdict ($550,000), the amounts of previous settlement demands ($750,000 and $440,000), and the amount sought in the complaint (in excess of $1 million). Those differences, however, are not dispositive. Both Carp and North Shore had strong statute of repose defenses which Duo-Fast did not share. Those defenses parallel subsequent appellate court interpretations of the statutes; even if they had not, their existence is a substantial factor in the weighing of the good-faith nature of the settlements and were so considered by the circuit court.

■■ Additionally, Duo-Fast asserts that it was entitled to an evidentiary hearing on the good-faith aspect of the settlements. At the time Duo-Fast raised its objection to the settlements it could have requested an evidentiary hearing, which it did not. It also could have made an offer of proof during its post-trial motion on this issue, but chose not to do so. Instead, trial counsel for Duo-Fast engaged in an extensive analysis and argument on the good-faith issue. The circuit court is authorized to determine the good faith of a settlement based solely upon the arguments of counsel. See *Perez v. Espinoza* (1985), 137 Ill. App. 3d 762, 765-66, 484 N.E.2d 1232; *Pell v. Victor J. Andrew High School* (1984), 123 Ill. App. 3d 423, 435, 462 N.E.2d 858.

■■ There is, therefore, no evidence supporting Duo-Fast's contention that the settlements were not entered into in good faith, much less the required clear and convincing evidence necessary to invalidate the settlements.

### III

■■ Duo-Fast next contends that the circuit court erred in allowing, over its objections, testimony concerning the size of its plant. It argues that this testimony was used to enable plaintiffs to demonstrate defendant's "deep pockets." The questions, however, were asked at the beginning of the trial and merely gave some indication of the size of the Duo-Fast plant. Two of the questions, one of which was unanswered, concerned the physical size of the plant (10 acres and 172,000 square feet) and the third concerned the number of employees at the plant (approximately 1,000). None of these questions prejudiced Duo-Fast (*Lake County Forest Preserve District v. Continental Illinois National Bank & Trust Co.* (1976), 35 Ill. App. 3d 942, 946, 343 N.E.2d 6), and reversal on this basis would be unwarranted.

### IV

■■ Duo-Fast next asserts that it was entitled to a new trial or

judgment *n.o.v.* based upon plaintiffs' failure to prove that its alleged negligence or wilful violation of the Structural Work Act was the proximate cause of McKanna's death.

Judgment *n.o.v.* only should be granted if, after considering all the evidence in the aspect most favorable to the prevailing party, it so overwhelmingly favors the movant that no contrary verdict can stand. (*Pedrick v. Peoria & Eastern R.R.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) In the case *sub judice*, Duo-Fast's primary assertion is that no one saw McKanna fall from the ladder or even saw McKanna on the ladder and that plaintiffs' proof was premised upon an impermissible chain of inferences. Duo-Fast argues that plaintiffs' proof failed to establish the essential element of probable cause in plaintiffs' case. This interpretation of the facts, however, is unduly restrictive.

■■ ■ Circumstantial evidence consisting of facts or conditions giving rise to a reasonable inference of the truth of an underlying fact or assertion is admissible and may be used to support factually or negate the proof of any element of a cause of action. (*Kramer v. Weedhopper of Utah, Inc.* (1986), 141 Ill. App. 3d 217, 221, 490 N.E.2d 104, *appeal denied* (1986), 112 Ill. 2d 559.) The directly observed facts in the present instance were that McKanna's co-worker, Wollard, saw McKanna standing on the roof near the boiler room ladder hatchway, saw McKanna place his left hand on the hatchway cover, saw him turn around, apparently in preparation for his descent on the ladder, and he then peripherally perceived McKanna's fall. Wollard did not see McKanna actually on the ladder or McKanna slip from the ladder due to one of the alleged defects in the ladder. These omissions in his direct observations, however, do not automatically make plaintiffs' claims nonactionable. (*Charleston National Bank v. International Harvester Co.* (1974), 22 Ill. App. 3d 999, 1001-05, 317 N.E.2d 585; *Clubb v. Main* (1965), 65 Ill. App. 2d 461, 468, 213 N.E.2d 63; *Olsen v. Pigott* (1963), 39 Ill. App. 2d 191, 195-97, 188 N.E.2d 361.) Wollard witnessed McKanna's actions immediately prior to the crucial instant, and those actions clearly permit a reasonable inference that McKanna intended to descend the ladder. Additionally, there was evidence of dangerous defects throughout the length of the ladder (the poorly spaced and slippery rungs), and especially near the top of the ladder (its failure to reach to roof level and the obstructing I-beam at the second and fourth rung from the top). There was also testimony that McKanna was careful on ladders and was a safety-conscious worker. (See *Vuletich v. Bolgla* (1980), 85 Ill. App. 3d 810, 814, 407 N.E.2d 566; *Hughes v. Wabash R.R.* (1950), 342 Ill. App. 159, 165, 95 N.E.2d 735.) In light of these facts and the reasonable infer-

ences which could have been drawn therefrom by the jury, Duo-Fast was not entitled to either a new trial or a judgment *n.o.v.*

## V

■■ Duo-Fast next contends that plaintiffs failed to prove that McKanna had been engaged in an activity upon a structure as defined under the Structural Work Act. This argument is set forth in part IV of Duo-Fast's brief and we have taken with the case plaintiffs' motion to strike this argument. Plaintiffs' motion is based upon the following: (1) the case was tried before a jury, based upon the theory of negligence and the theory of Structural Work Act violation; (2) the only objection raised by Duo-Fast to the Structural Work Act theory was that Duo-Fast did not "have charge" of the work and that there was no proof that the defects proximately caused McKanna's death; however, Duo-Fast raised no issue as to whether McKanna was working on a structure within contemplation of the Structural Work Act. Plaintiffs conclude that the factual and legal issues which have not been presented at the circuit court level cannot be considered for the first time on appeal.

An issue not properly raised in or considered by the circuit court cannot be argued before a court of review. (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147, 324 N.E.2d 417; *Shell Oil Co. v. Department of Revenue* (1983), 95 Ill. 2d 541, 550, 449 N.E.2d 65.) This rule is particularly applicable where, as here, proof could have been offered to refute or overcome such an issue had it been presented at the trial level. (*Klubeck v. Division Medical X-Ray, Inc.* (1982), 108 Ill. App. 3d 630, 636, 439 N.E.2d 506; *Carter v. Dunlop* (1985), 138 Ill. App. 3d 58, 60, 484 N.E.2d 1273.) Evidence adduced by plaintiffs has demonstrated that McKanna and his co-worker were repairing an air-conditioning system installed in Duo-Fast's building, both inside the building and upon the roof. Work was being performed by them in both places and involved the repair of water leaks into the building itself, apparently emanating from the condenser units on the roof through duct work installed in the building. Such evidence tends to show that McKanna's work involved repair of the building under the Structural Work Act. (*Simmons v. Union Electric Co.* (1984), 121 Ill. App. 3d 743, 460 N.E.2d 28, *aff'd* (1984), 104 Ill. 2d 444. ) Had Duo-Fast raised the issue of whether this was work contemplated by the Structural Work Act at the trial level, plaintiffs might well have enlarged upon this evidence and secured an even more solid foundation for application of the Structural Work Act. Accordingly, we hold that Duo-Fast's argument as to this issue was waived and, assuming that

there had been no waiver, that the argument would have been rejected in any event. In a separate order, plaintiffs' motion to strike part IV of Duo-Fast's brief has been allowed.

■■ Duo-Fast's contention that McKanna's work was not a covered activity relies upon a case that excluded work on equipment from protection under the Structural Work Act. (*Innis v. Elmhurst Dodge Inc.* (1985), 107 Ill. 2d 151, 156, 481 N.E.2d 709 (involving a compressor for hydraulic lifts).) Its reliance, however, is misplaced. The air-conditioning equipment involved in the present case, unlike that in *Innis*, was not movable, but rather formed an integral part of the building where it was located. Its duct work ran throughout the building and it could not be considered a movable piece of equipment, unlike the compressor in *Innis* which, although large and bulky, was not an integral part of the structure. Nor does *Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 422-23, apply, which held that stairs that merely provided a pathway to and from a storage area were not a device covered under the Structural Work Act. Here, the ladder provided necessary access to the air-conditioning system within the building and upon its roof, and constituted a scaffold for purposes of the Act. *Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 452, 473 N.E.2d 946.

## VI

■■ ■ Duo-Fast also contends that it was not proved to have been in charge of the work site. The determination of whether a defendant was in charge of activities is primarily a fact question (*Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 452, 473 N.E.2d 946), and can be decided as a matter of law only when there are no facts of record which could support a contrary finding (*Manisco v. Marseilles Fire Protection District* (1985), 132 Ill. App. 3d 390, 392, 477 N.E.2d 534). An owner of property who has charge of construction activities may be liable for injuries under the Act. *Manisco v. Marseilles Fire Protection District* (1985), 132 Ill. App. 3d 390, 392, 477 N.E.2d 534.

■■ Duo-Fast need not have been entirely in charge of the repairs in order to have become liable under the Structural Work Act; it was sufficient if it was shown to have been in charge of some aspect of the work. (*Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 211 N.E.2d 247.) In the present case, Duo-Fast had exclusive control over the boiler room ladder, contained within a locked room, which it knew was hazardous and had even promulgated a rule against its use. It was Duo-Fast's employees who unlocked the access

door to the boiler room and the hatch to the roof which enabled McKanna to make use of the ladder utilized in the work. The jury could have found from this evidence that Duo-Fast was in charge of this phase of the work and was in a superior position to determine the means by which the work would be accomplished. The question of "having charge" of the work, or some part thereof, being one of fact for the jury here (*Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry.* (1961), 22 Ill. 2d 305, 175 N.E.2d 785), we cannot say that the evidence so overwhelmingly supports defendant's position so as to warrant reversal on this issue.

## VII

■■ ■ Duo-Fast finally contends that the circuit court erred in allowing plaintiffs' expert to testify about making the boiler room ladder safer. Evidence of measures which could have made a device less dangerous, here a ladder, is admissible in both negligence and Structural Work Act actions. (*Walsh v. A. D. Conner, Inc.* (1981), 99 Ill. App. 3d 427, 432, 425 N.E.2d 1153; *Kelty v. Wiseman Construction Co.* (1976), 38 Ill. App. 3d 808, 813-15, 349 N.E.2d 108.) Duo-Fast contends that since there was no proof that McKanna fell from the ladder, any evidence of defects in the ladder was irrelevant and speculative. As noted previously, however, there was sufficient circumstantial evidence from which the jury could reasonably infer that McKanna was on the ladder when he fell. Additionally, since there were four allegedly dangerous conditions present in the ladder and since, due to McKanna's death, it could never be established which, if any, was responsible for his fall, evidence of all four alleged defects was reasonably relevant. Plaintiffs' inability to prove which led to McKanna's death does not make the evidence speculative. Accordingly, Duo-Fast's contention is without merit.

From the foregoing discussion, we conclude that the dismissal of Carp and North Shore and the claims against them was not error. Further, the judgment based upon common law negligence and for violation of the Structural Work Act must be affirmed.

Affirmed.

SCARIANO, P.J., and STAMOS, J., concur.