RICHARD SMITH, Plaintiff-Appellee, v. TEXACO, INC., *et al.*, Defendants-Appellants (Bullard Abrasive Products, Inc., *et al.*, Defendants-Appellees).

First District (1st Division)   Nos. 1—91—0254, 1—91—0255 cons.

Opinion filed July 20, 1992.

464

O'Connor, Schiff & Myers, of Chicago (Neil D. O'Connor, Joseph A. Girardi, and Loretta M. Griffin, of counsel), for appellants.

Law Office of John C. Meyer, of Chicago (John C. Meyer, of counsel), for appellee Bullard Abrasive Products, Inc.

Johnson & Bell, Ltd., of Chicago (Thomas H. Fegan, of counsel), for appellees Lamb Airfoil Company, Inc., and Mine Safety Appliance Company.

No brief filed for appellee Richard Smith.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff Richard Smith brought action against several defendants, including Texaco, Inc., and Texaco Refining & Marketing, Inc. (collectively Texaco), General Gas & Oil Company (General Gas), Mine Safety Appliance Company (Mine Safety), Lamb Airfoil Company, Inc. (Lamb Airfoil), and Bullard Abrasive Products, Inc. (Bullard), for injuries he sustained in an explosion while working on an underground gasoline storage tank. On November 30, 1990, plaintiff negotiated settlements of his claims against Bullard, Mine Safety and Lamb Airfoil (collectively, settling defendants). These defendants, thereafter, petitioned the circuit court for findings of good faith pursuant to the Joint Tortfeasor Contribution Act (Act) (Ill. Rev. Stat. 1987, ch. 70, pars. 301 through 305).

On December 6, 1990, the circuit court granted Texaco and General Gas leave to file counterclaims for contribution against the settling defendants. On December 7, 1990, after a hearing regarding whether the settlements were made in good faith pursuant to the Act (Ill. Rev. Stat. 1987, ch. 70, pars. 301 through 305), the circuit court found that the settlement met the criteria of the Act. On December 13, 1990, the circuit court entered an order on its December 7 good-faith findings and dismissed with prejudice Texaco's and General Gas' counterclaims against the settling defendants. Texaco and General Gas appeal the December 13 order.

On April 1, 1985, plaintiff was injured in an explosion which occurred at an automobile service station. Plaintiff alleges he sustained severe burns and quadriplegia as a result of the explosion.

The service station was owned and operated by Joseph Paggie and Martin Ewasiuk, individually and doing business as Pag-Mar Texaco Services (Pag-Mar). Pag-Mar contacted Thomas Hurley (Hurley), individually and doing business as Fiberglass Services Tank Relining Company (Fiberglass), and retained Fiberglass to repair a leak in one of the station's underground storage tanks. The tank had alleg-

edly been used by Pag-Mar to store gasohol. The gasohol had been sold to Pag-Mar by General Gas, which plaintiff alleged purchased the gasohol from Texaco.

In late March 1985, plaintiff and his employer, Hurley, began the tank repair work. Hurley had planned on repairing the holes and installing a lining in the tank. After digging down to the top of the tank and removing the manway hatch cover, plaintiff and his employer removed gasohol from the tank by siphoning it out and soaking it up. During this phase, plaintiff used a Lamb Model 3 Air Mover to remove the combustible vapors in the tank. The air mover was manufactured by Mine Safety and Lamb Airfoil and distributed and sold by Mine Safety. The air mover was specifically developed to ventilate confined areas like underground storage tanks.

After siphoning and soaking up the gasohol, the tank was closed because Hurley wanted to have it inspected by a lining manufacturing company. At this time, the holes in the lining at the bottom of the tank were not plugged and liquid continued to seep in through those holes. The inspection took place on April 28 or 29, and the tank remained closed over the weekend until Monday, May 1, 1985. On that morning, plaintiff began to grind old sealant off the perimeter of the manway opening on the tank with a grinding wheel manufactured, distributed and sold by Bullard. According to plaintiff's complaint and deposition, a piece of the grinding wheel separated from the device, fell into the tank and ignited gasohol vapors remaining in the tank, causing the explosion and injuring plaintiff.

Plaintiff brought suit against Paggie, Ewasiuk, Pag-Mar, Hurley, Fiberglass, Texaco, Bullard, Lamb Airfoil and Mine Safety. Plaintiff engaged in settlement negotiations with Mine Safety, Lamb Airfoil and Bullard. On November 30, 1990, plaintiff reached a settlement agreement with Mine Safety and Lamb Airfoil whereby plaintiff agreed to release those two defendants from all liability in exchange for the total sum of $35,000. Plaintiff reached a similar agreement with Bullard for $200,000. The settling defendants filed motions requesting the circuit court to find the settlements to have been made in good faith and that all contribution claims against them be dismissed with prejudice.

Texaco and General Gas objected to the settlement agreements and filed their responses to the settling defendants' motions for good-faith findings. The basis for the objections was that the settlement agreements were not in good faith in light of the totality of circumstances, and the settlement figures of $35,000 and $200,000 did not

reasonably approximate the settling defendants' *pro rata* share of any potential liability.

On December 13, 1990, the circuit court entered a finding of good faith over Texaco's and General Gas' written and oral objections. The circuit court found that there was no evidence or allegation of fraud, duress, collusion or tortious conduct in the negotiations between plaintiff and the settling defendants, and that both settlement agreements were made in good faith pursuant to the Act. The circuit court dismissed with prejudice the plaintiff's complaint against Mine Safety, Lamb Airfoil and Bullard. The court also dismissed all counterclaims, cross-claims and third-party actions filed against the settling defendants. The circuit court found that its orders and motions were final and appealable. (134 Ill. 2d R. 304.) Texaco appealed and filed appellate briefs.

On July 19, 1991, General Gas filed a motion for leave to adopt Texaco's appellate briefs as its own. On August 5, 1991, we granted General Gas' motion.

Texaco and General Gas argue that the circuit court erred in finding that the settlements were in good faith. We disagree.

■■ Section 2(a) of the Act creates a right of contribution among two or more persons who are subject to liability in tort arising from the same injury. (Ill. Rev. Stat. 1987, ch. 70, par. 302(a).) When an alleged tortfeasor settles with a plaintiff in good faith, he is discharged from all contribution liability. (Ill. Rev. Stat. 1987, ch. 70, par. 302(d).) Since the Act does not define what constitutes a "good-faith" settlement, the issue is left to the discretion of the trial court. (*Dixon v. Northwestern Publishing Co.* (1988), 166 Ill. App. 3d 745, 751-52, 520 N.E.2d 932, 937.) The circuit court may evaluate counsel's arguments, affidavits, depositions, other discovery evidence and evidence received at the hearing. *Barreto v. City of Waukegan* (1985), 133 Ill. App. 3d 119, 128, 478 N.E.2d 581, 587.

■■ The settling defendants state that once the settling parties represent to the court that a good-faith settlement has been reached and its terms are made known to the court, a presumption of validity arises. (See *Ruffino v. Hinze* (1989), 181 Ill. App. 3d 827, 829, 537 N.E.2d 871, 872, citing *Wasmund v. Metropolitan Sanitary District* (1985), 135 Ill. App. 3d 926, 482 N.E.2d 351.) Further, the settling defendants state that a presumption of validity is created whenever there is a resolution of a claim by virtue of a release or covenant. (*Bituminous Insurance Cos. v. Ruppenstein* (1986), 150 Ill. App. 3d 402, 501 N.E.2d 907.) Although these are accurate statements of Illinois

law, they are irrelevant to the issue of whether a settlement was made in good faith pursuant to the Act.

■■ A presumption of validity of a settlement or release agreement arises by the mere existence of an agreement which is legal and binding on its face. (See *McComb v. Seestadt* (1981), 93 Ill. App. 3d 705, 417 N.E.2d 705.) A party to such an agreement can overcome that presumption by proving through clear and convincing evidence that there was fraud in the inducement, fraud in the execution, mutual mistake or mental incompetency. (*Blaylock v. Toledo, Peoria & Western R.R. Co.* (1976), 43 Ill. App. 3d 35, 356 N.E.2d 639.) When, however, a party argues that the agreement was not made in good faith pursuant to the Act, the mere existence of a document, legal and binding on its face, does not give rise to a presumption of good faith, as the settling defendants argue.

The settling defendants cite *Wasmund* for the proposition that the mere existence of the settlement gives rise to a presumption of good faith. *Wasmund* does not state that proposition. Rather, *Wasmund* held that there was no evidence that the settlement was *invalid*. What *Wasmund* did state was that Illinois case law has not specifically defined "good faith." *Wasmund* further held that the circuit court was within its discretion in finding the settlement to be in good faith. *Wasmund*, 135 Ill. App. 3d at 930, 482 N.E.2d at 354.

The issue presented on appeal is whether the circuit court was within its discretion in entering a finding of good faith regarding the settlement agreement. In the case at bar, the same circuit court judge who presided over the pretrial conference during which the settling defendants and plaintiff engaged in settlement negotiations heard arguments on the motions for good-faith findings. We initially note that Texaco and General Gas admitted that they had no knowledge of any fraud, duress, collusion or tortious conduct related to the settlements. Texaco and General Gas, however, objected at the hearing on the motions for good-faith findings, and continue to argue on appeal that the settlements do not meet the criteria for a good-faith finding on the basis of the small percentage of settlement in relation to the possible liability and, furthermore, that the totality of the circumstances show a lack of good faith.

■ Texaco and General Gas correctly argue that the Illinois Supreme Court has stated that when considering whether a settlement agreement was made in good faith, the entire circumstances surrounding the settlement must be taken into account. (*Wilson v. Hoffman Group, Inc.* (1989), 131 Ill. 2d 308, 318, 546 N.E.2d 524, 529.) It is, however, within the circuit court's discretion to determine what is

required before a finding of good faith may be made. *Ruffino*, 181 Ill. App. 3d at 832, 537 N.E.2d at 872, citing *Dixon v. Northwestern Publishing Co.* (1988), 166 Ill. App. 3d 745, 520 N.E.2d 932; *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 463 N.E.2d 792.

■ The record on appeal indicates that prior to entering the order finding the settlements to have been made in good faith, the circuit court acknowledged the facts that (1) there were arms' length negotiations between the settling defendants and plaintiff; (2) the negotiation sessions were "lengthy" and "very serious"; (3) the settling defendants had asserted affirmative defenses and continued to deny liability; (4) the settling defendants stated that they determined the amount they were willing to contribute toward settlement based upon defense costs and "very tenuous liability exposure"; (5) the settling defendants represented that there were no side agreements, no additional deals or any additional consideration apart from those contained in the settlement agreements presented to the court; (6) Texaco and General Gas argued that Bullard was an ongoing concern with assets and $5.5 million in primary coverage and $5 million in excess coverage, but settled for less than 4% of its coverage; and (7) Texaco and General Gas argued that the settling defendants did not pay their *pro rata* share. It is clear that the circuit court considered the totality of the circumstances surrounding the settlements before making a finding of good faith. We agree with the circuit court that the totality of the circumstances does not indicate a lack of good faith.

Next, Texaco and General Gas argue that the circuit court erred in entering its finding of good faith because of the great disparity between the potential value of plaintiff's claim and the comparative liability of the settling defendants. Contrary to this argument, Illinois courts have consistently rejected challenges to good-faith settlements based upon alleged disparities between the value of settlements and settling tortfeasors' relative culpability for claimant's damages. (*Ruffino*, 181 Ill. App. 3d 827, 537 N.E.2d 871; *Doellman v. Warner & Swasey Co.* (1986), 147 Ill. App. 3d 842, 498 N.E.2d 690; *Lowe*, 124 Ill. App. 3d 80, 463 N.E.2d 792; *O'Connor v. Pinto Trucking Service, Inc.* (1986), 149 Ill. App. 3d 911, 501 N.E.2d 263.) It has been recognized that settlements may be substantially different from the results of litigation because damages are often speculative and the probability of liability uncertain. (*O'Connor*, 149 Ill. App. 3d at 916, 501 N.E.2d at 267.) In *Wasmund*, this court expressed the inherent difficulty of ascertaining a settling defendant's relative culpability for a claimant's injuries.

" 'All involved in the personal injury settlement business are aware of its large imponderables—the risk of victory or defeat at the jury's hands, the risk of a high or low verdict, the unknown strengths and weaknesses of defenses, the inexact appraisal of damage elements, the defendant's solvency and the extent of insurance coverage. In advance of a jury verdict, most cases permit only a rough estimate of value. When one tortfeasor chooses to settle and another chooses to litigate, inequality in the ultimate cost does not signalize bad faith.' " *Wasmund*, 135 Ill. App. 3d at 929-30, 482 N.E.2d at 353-54, quoting *River Garden Farms, Inc. v. Superior Court* (1972), 26 Cal. App. 3d 986, 997-98, 103 Cal. Rptr. 498, 506-07.

The only evidence presented of the settling defendants' relative culpability was statements made by General Gas and Texaco that the settling defendants were primarily liable for plaintiff's injuries. The record reveals no evidence that the settlement figures are not within the range of relative fault attributable to the settling defendants. Although the sum paid may be disproportionate to the sum prayed for in the complaint, it is not out of proportion to what the trial court may have considered the probable recovery of the plaintiff may have been. The circuit court was not required to ignore its own experience, since good or bad faith is a question of fact in each case. See *Wasmund*, 135 Ill. App. 3d at 930, 482 N.E.2d at 354.

We find that although a "totality of the circumstances" evaluation must include a consideration of the factor of "equitable apportionment," it is not the sole basis for determining good faith pursuant to the Act. Further, we caution the circuit courts not to become "rubber stamps" in determining good faith. In the present case, the circuit court did not merely rubber stamp the settlements. Not only did the circuit court, in fact, truly evaluate the totality of the circumstances surrounding the settlements, but General Gas and Texaco have failed to even demonstrate that the settlement figures were disproportionate to the settling defendants' potential liabilities, taking into consideration the settling defendants' defenses and continual denial of liability. We hold that the circuit court did not abuse its discretion in entering the findings of good faith.

Last, Texaco and General Gas argue that we should adopt California's "reasonable range" test set forth in *Tech-Bilt, Inc. v. Woodward-Clyde & Associates* (1985), 38 Cal. 3d 488, 698 P.2d 159, 213 Cal. Rptr. 256. Under *Tech-Bilt*, California courts consider numerous factors in determining good faith, placing emphasis on whether the settlement is within the range of the settling defendant's share of lia-

bility for claimant's injuries. Illinois courts have adopted the totality of the circumstances test and have rejected the argument that there cannot be a determination of good faith unless there is a showing of relative liabilities of the parties and have refused to place emphasis on any one factor in determining good faith. (*Ruffino*, 181 Ill. App. 3d at 831, 537 N.E.2d at 874; see also *Barreto*, 133 Ill. App. 3d 119, 478 N.E.2d 581; *Lowe*, 124 Ill. App. 3d 80, 463 N.E.2d 792.) Accordingly, we find that the circuit court properly applied the totality of the circumstances test and refused to use the reasonable range test.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and MANNING, JJ., concur.