778 P.2d 1337

**CITY OF TUCSON, Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF PIMA; Honorable John G. Hawkins, a Judge thereof, Respondents,**

and

**COTTONWOOD DEVELOPMENT CO., INC.; George P. Mehl Construction Co., Inc., Bear Canyon Shopping Center: dba Cottonwood Properties Inc.; Cottonwood Development, Inc.; Bear Canyon Shopping Center, and/or George P. Mehl Construction Co.; Pima County, a governmental organization in the State of Arizona; Osborn, Petterson, Walbert & Assoc. Engineering and Surveying, an Arizona Corporation; R.E. Miller Paving and Construction, Inc.; the Superior Court of Arizona, In and For the County of Pima; and John G. Hawkins, a Judge thereof, Real Parties in Interest.**

No. 2 CA–SA 89–0030.

Court of Appeals of Arizona, Division 2, Department A.

April 11, 1989.

Review Granted Sept. 19, 1989.

Kimble, Gothreau & Nelson, P.C. by Michael P. Morrison and Michael J. Gothreau, Tucson, for petitioner.

Murphy, Goering, Roberts & Holt, P.C. by David L. Berkman and Michael F. McNamara, Tucson, for real parties in interest.

## OPINION

LIVERMORE, Presiding Judge:

This special action arises out of the trial court's granting of the motion for partial summary judgment filed by the real parties in interest in their contribution action against petitioner City of Tucson (the City) under the Uniform Contribution Among Tortfeasors Act, A.R.S. §§ 12–2501 through 12–2509 (UCATA). Because this is a case of first impression, calling for the clarification of important issues relating to UCATA, and because the City has no equally plain, speedy, and adequate remedy by appeal, we accept jurisdiction. Ariz.R. P.Spec. Actions 1, 17B A.R.S.

## ISSUE

The sole issue in this special action is whether a trial court's determination pursuant to Ariz.R.Civ.P. 16.1, 16 A.R.S., that a settlement in a tort action was made in good faith precludes a nonsettling tortfeasor from litigating the amount of the original plaintiff's damages in a subsequent action for contribution.

## FACTS AND PROCEDURAL HISTORY

Andrea Barham, the survivor of Richard Barham, and various other individuals, brought a personal injury action in Pima County Superior Court against the City and numerous other defendants in connection with an automobile accident which resulted in the death of Richard Barham and the bodily injury of Cristina Hold. The complaint alleged that the City and the real parties in interest were negligent in the design, construction, maintenance and signing of certain portions of Bear Canyon Road in Tucson, Arizona. A similar cross-claim was filed by defendant Kimberly Zimmer, apparently the driver of the other car involved in the accident.

In January 1987, the plaintiffs and cross-claimants in the personal injury action reached a settlement with all of the real parties in interest (the settling defendants). In its January 19 minute entry, the trial court set forth the specific terms of the settlement, including the entire amount to be paid to the various claimants and each settling defendant's portion thereof. The settling defendants filed motions with the trial court pursuant to Ariz.R.Civ.P. 16.1, 16 A.R.S., seeking the court's determination that the settlement was in good faith. The City filed a response in opposition. After considering the affidavits submitted by the parties and the arguments of counsel, the trial court found that the settlement was in good faith. Subsequently, all claims in the personal injury action were dismissed with prejudice, except the cross-claims against the City for contribution under UCATA which were dismissed without prejudice.

On December 17, 1987, the settling defendants filed a complaint against the City seeking contribution for the amounts paid in settlement of the personal injury action which were allegedly "in excess of their actual pro rata shares of potential liability" to the various claimants. Thereafter, the settling defendants filed a motion for partial summary judgment, contending that

because the amounts paid in settlement of the personal injury action were reviewed and approved by the trial court, the issue of damages had been litigated and, therefore, the City was collaterally estopped from relitigating the issue in the contribution action. They argued that, as a matter of law, the amount of damages was determined by the settlement and that only the parties' proportionate shares of fault remained to be adjudicated. The trial court granted the motion and this special action followed. For the reasons set forth below, we grant relief.

## UCATA

As part of Arizona's adoption of the doctrine of comparative negligence, the legislature enacted A.R.S. §§ 12–2501 through 12–2509, which govern the right of joint tortfeasors to seek contribution from one another. Section 12–2501 provides, in pertinent part:

A. Except as otherwise provided in this article, if two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.

B. The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is compelled to make contribution beyond his own pro rata share of the entire liability.

\*　　\*　　\*　　\*　　\*　　\*

D. A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury or wrongful death is not extinguished by the settlement nor in respect to any amount paid in a settlement which is in excess of what was reasonable.

Section 12–2504 sets forth the conditions which must exist in order for a tortfeasor who settles with and is released by a claimant to obtain protection from a subsequent claim for contribution by any other tortfeasor:

If a release or covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death both of the following apply:

1. It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant or in the amount of the consideration paid for it, whichever is greater.

2. It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

The dual objectives behind UCATA are the encouragement of settlements and the equitable sharing of fault among joint tortfeasors. *Tech–Bilt, Inc. v. Woodward–Clyde & Associates*, 38 Cal.3d 488, 213 Cal.Rptr. 256, 698 P.2d 159 (1985). The act anticipates situations where less than all tortfeasors want to settle, providing tortfeasors who do settle with protection from subsequent claims for contribution by nonsettling tortfeasors only if the settlement is made in good faith. The act permits the settling tortfeasor to seek contribution from the nonsettling tortfeasor for amounts paid in excess of the settling tortfeasor's pro rata share of the claimant's damages only if the nonsettling tortfeasor has been released from liability and only to the extent the amount paid in settlement was reasonable.

The statute does not contain guidelines, however, for determining what is "reasonable" for purposes of A.R.S. § 12–2501(D) or what constitutes "good faith" for purposes of A.R.S. § 12–2504, nor does it provide a procedural mechanism by which such determinations may be made. In an attempt to answer at least the need for a procedure by which a finding of good faith could be made, Ariz.R.Civ.P. 16.1 was promulgated:

## RULE 16.1 GOOD FAITH
## SETTLEMENT
## HEARINGS

**(a) Petition.** In any action where it is alleged that two or more parties are joint tortfeasors, and a settlement is entered into by any of the parties to the action, the court, upon petition of any party, shall make a formal determination whether the settlement is made in good faith. Any petition shall be accompanied by affidavits. If the petition is filed by the parties to the settlement, such affidavits shall set forth the terms of the settlement and the circumstances establishing the good faith of the settlement.

**(b) Objection to Petition.** Within ten days after a petition has been filed, any other party may file an objection to the petition, supported by accompanying affidavits. Replies to the objection shall be filed within ten days of service of the objection. The foregoing time periods may be shortened or enlarged by the court or by agreement of the parties.

**(c) Hearing.** Upon timely request of any party, the court shall set a time for hearing of the objection. If no request is made, the court may, in its discretion, set a time for such hearing, or rule without a hearing. If a hearing is set, the court shall consider the circumstances and evidence set forth in the parties' affidavits, and shall receive other evidence as presented.

### COLLATERAL ESTOPPEL

The settling defendants concede that the issue of the pro rata portion of liability to be attributed to them and to the City must be litigated in the contribution action. They contend, however, that the issue of damages was litigated in the Rule 16.1 proceeding and, therefore, the City is collaterally estopped from relitigating that issue. Resolution of this question requires consideration of the nature of a Rule 16.1 hearing.

There are no cases in Arizona addressing the standards to be applied in making the "good faith" determination in a Rule 16.1 proceeding. Two lines of authority have

evolved in other jurisdictions. Under the "tortious conduct" theory, all settlements are presumed fair and in good faith unless there is evidence of collusion or other tortious conduct. *See, e.g., Dompeling v. Superior Court,* 117 Cal.App.3d 798, 173 Cal. Rptr. 38 (1981); *Torres v. State,* 67 App. Div.2d 814, 413 N.Y.S.2d 262 (1979). Under the "reasonable range" test, the determination of good faith requires the court to consider a number of factors, including:

a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial. Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interest of nonsettling defendants. Finally, practical considerations obviously require that the evaluation be made on the basis of information available at the time of settlement.... The party asserting the lack of good faith ... should be permitted to demonstrate, if he can, that the settlement is so far "out of the ballpark" in relation to these factors as to be inconsistent with the equitable objectives of the statute. Such a demonstration would establish that the proposed settlement was not a "settlement made in good faith" within the terms of [the statute].

*Tech–Bilt, Inc. v. Woodward–Clyde & Associates,* 38 Cal.3d at 499, 213 Cal.Rptr. at 263, 698 P.2d at 166–67 (citations omitted). *See also Far West Financial Corp. v. D & S Co., Inc.,* 46 Cal.3d 796, 251 Cal.Rptr. 202, 760 P.2d 399 (1988); *Abbott Ford, Inc. v. Superior Court,* 43 Cal.3d 858, 239 Cal. Rptr. 626, 741 P.2d 124 (1987); *Pickett v. Stephens–Nelsen, Inc.,* 43 Wash.App. 326, 717 P.2d 277 (1986).

From the record before us, it appears that the Rule 16.1 hearing concerned solely the application of the *Tech–Bilt* "reasonable range" criteria to the facts of this

case. While affidavits were submitted by the parties to substantiate some aspects of the damages claimed and paid, no evidence was presented nor did the court make any findings as to damages. Such was not the purpose of the hearing. Assuming without deciding that the *Tech–Bilt* "reasonable range" test is appropriately applied under Rule 16.1, the purpose of the hearing is solely to determine whether a settlement has been entered into in good faith, and not to determine the plaintiff's actual damages. While the amount paid is clearly relevant, it is only one of many factors to be considered in determining good faith. *Tech–Bilt, supra.*

Application of the doctrine of collateral estoppel requires more than what transpires in a Rule 16.1 hearing.

> Collateral estoppel or issue preclusion is applicable when the issue or fact to be litigated was actually litigated in a previous suit, a final judgment was entered, and the party against whom the doctrine is to be invoked had a full opportunity to litigate the matter and actually did litigate it, provided such issue or fact was essential to the prior judgment.

*Chaney Building Co. v. City of Tucson,* 148 Ariz. 571, 573, 716 P.2d 28, 30 (1986); *see also Tash v. Saunders,* 153 Ariz. 322, 736 P.2d 805 (App.1987); *Kordsiemon v. Christianson,* 153 Ariz. 217, 735 P.2d 827 (App.1986). In this case the amount paid by the settling defendants was only considered in the context of whether the settlement was in good faith and, in that regard, whether it was a reasonable, ballpark figure in light of a multitude of other factors, including the expense and uncertainty of trial. Findings of reasonableness and good faith are not tantamount to a finding of actual damages. The issue of damages was not actually litigated, nor did the City have an opportunity to litigate it.

The settling defendants contend that under *United Services Auto Ass'n v. Morris,* 154 Ariz. 113, 741 P.2d 246 (1987), binding the City to their determination of the damages is entirely proper. In *Morris,* the Arizona Supreme Court considered (1) whether two insureds who were being defended under a reservation of rights could protect themselves from personal exposure by entering into a settlement agreement with the plaintiff in an underlying tort action without breaching the cooperation clause of their insurance policy, and, (2) whether the settlement is binding upon the insurer. The court found that the cooperation clause was not breached by the insureds' settlement and, as long as the settlement was reasonable, the insurer was bound by it. The situation in *Morris* is not analogous to claims for contribution among joint tortfeasors under UCATA. First, *Morris* dealt with an automobile insurance carrier's contractual duty to defend and indemnify its insureds. Indemnification and contribution are not the same. *Zapico v. Bucyrus–Erie Co.,* 579 F.2d 714, 718–19 (2d Cir.1978). On this basis alone, *Morris* is distinguishable. Second, the City was a party to the personal injury action and, as such, had a right to a determination of the issues in that case by a jury. The insurance carrier is rarely, if ever, a proper party defendant in the personal injury action against its insured. Similarly, we do not believe that cases relating to the subrogation rights of insurance carriers under A.R.S. § 20–259.01 are analogous and, therefore, we reject the settling defendants' arguments in this regard.

### RIGHT TO JURY TRIAL

The City contends that the trial court's interpretation of UCATA and Rule 16.1 has the effect of depriving it of the right to a jury trial on damages. We agree.

The right to a trial by jury is guaranteed by the Arizona Constitution. Ariz.Const. art. II, § 23. The right "shall be preserved inviolate to the parties." Ariz.R.Civ.P. 38(a), 16 A.R.S. Under the result reached by the trial court and urged by the settling defendants, a nonsettling tortfeasor is deprived of that right. The nonsettling tortfeasor may be unwilling to participate in the settlement because he disputes liability, the amount of damages the settling tortfeasors are willing to pay, or both. The effect of the trial court's ruling is to permit the settling tortfeasor to preclude the non-

settling tortfeasor from fully and fairly litigating damages in the underlying action and again in the contribution action. We do not believe that the legislature intended such a result.

## CONCLUSION

Based upon the foregoing, we believe that the trial court's granting of the settling defendants' motion for partial summary judgment was erroneous and in excess of the court's legal authority. The issue of damages, like the issue of liability, raises questions of fact which only the trier of fact may resolve. Neither of these issues have been previously litigated, and are properly the subject of the contribution action.

The order of the trial court is vacated and the case is remanded for further proceedings.

HATHAWAY and FERNANDEZ, JJ., concur.