797 P.2d 1223

Ziva BARMAT, Plaintiff/Appellee,

v.

JOHN AND JANE DOE PARTNERS A–D; Edward G. Hochuli and Jane Doe Hochuli, Defendants/Appellants/Cross–Appellees,

John and Jane Doe Partners 1–5; Carl Hazlett and Jane Doe Hazlett, Defendants/Appellees.

Carl HAZLETT and Jane Doe Hazlett, Third-party Plaintiffs,

v.

JOHN AND JANE DOE PARTNERS X–Z; David Leonard and Judy Leonard, Third-party Defendants/Appellees/Cross–Appellants.

Nos. 2 CA–CV 89–0004, 2 CA–CV 89–0075.

Court of Appeals of Arizona, Division 2, Department A.

Jan. 12, 1990.

Reconsideration Denied Feb. 22, 1990.

As Corrected May 1, 1990.

Harrison, Rollman & Gabroy, P.C. by John Gabroy and Richard M. Rollman, Tucson, for plaintiff/appellee.

Gallagher & Kennedy, P.A. by Michael K. Kennedy, Phoenix, for defendants/appellants/cross-appellees.

Kimble, Gothreau & Nelson, P.C. by William Kimble and David Toone, Tucson, for defendants/third-party plaintiffs/appellees John and Jane Doe Partners 1–5.

Snell & Wilmer by William H. Tinney and Terrence Jackson, Tucson, for defendants/third-party plaintiffs/appellees Hazlett.

Bury, Moeller, Humphrey & O'Meara by Marshall Humphrey III, Tucson, for third-party defendants/appellees/cross-appellants Leonard and John and Jane Doe Partners X–Z.

## OPINION

HATHAWAY, Judge.

In this legal malpractice action, appellant Edward Hochuli and his law partners (Hochuli) seek reversal of the trial court's judgment that a settlement agreed to by plaintiff and other defendants was entered into in good faith. Ariz.R.Civ.P. 16.1, 16 A.R.S. (Rule 16.1) Hochuli also appeals from the trial court's judgment denying a motion to file a third-party complaint.

The facts leading up to this malpractice action are contained in this court's opinion in *Barmat v. Doe,* 155 Ariz. 515, 747 P.2d 1214 (App.1986). Briefly, the law firm of Hazlett & Murphy (Murphy Partners) [aka John and Jane Doe Partners 1–5], of which Carl Hazlett (Hazlett) was then a partner, was retained by Ziva Barmat's (Barmat) insurance company to defend the underlying tort action. After a settlement for $300,000 had been reached, but before it

could be executed, the insurance carrier was declared insolvent. The Arizona Guaranty Fund replaced the insurance carrier and retained Hochuli and his law firm to represent Barmat. David Leonard (Leonard) in the underlying action was at all times Barmat's personal attorney. Named as defendants in the malpractice action brought by appellee Barmat, in addition to Hochuli, were Hazlett and the Murphy Partners. Hazlett and the Murphy Partners filed a third-party complaint against Leonard and his law partners.

Subsequent to the Arizona Supreme Court opinion in the prior case, *Barmat v. Doe*, 155 Ariz. 519, 747 P.2d 1218 (1987), Hazlett and the Murphy Partners entered into settlement negotiations with Barmat and agreed to pay her $470,000 plus interest in full and complete satisfaction of her legal malpractice claims against them.

On April 20, 1988, Hazlett and the Murphy Partners filed their motion for a Finding of Good Faith Settlement in accordance with Rule 16.1. Hochuli objected to the motion and on July 28, 1988, a hearing was held. At the hearing, Leonard orally moved to be included in the settlement agreement. The trial court granted the motion for a Finding of Good Faith, and on October 5, 1988, judgment was entered which provided "... that the court finds the settlement entered into by and between the Plaintiff on one side and defendants Hazlett and the Murphy Partners on the other side was entered into in good faith." Hochuli timely appealed from that judgment. On November 3, 1988, the trial court denied Hochuli's pending motion to file a third-party complaint against Leonard and motion for leave to amend the answer and assert a cross-claim for contribution against Hazlett and the Murphy Partners, and subsequently signed a judgment which provided "... that defendants Hochuli's motion*s are* denied because this *Court's prior determination of good faith acts as a bar to contribution claims* pursuant to A.R.S. § 12–2504." (Emphasis supplied). Hochuli also appeals from that judgment.

Hochuli's appeal from the trial court's judgment regarding the settlement between Barmat and Hazlett and the Murphy Partners raises the following arguments: (1) the standard to be applied by the trial court in determining whether a settlement is in good faith is "reasonable range" not "tortious conduct"; (2) the burden of proof that a settlement is in good faith is on the settling parties; (3) the trial court erred in denying discovery motions; (4) the trial court abused its discretion in approving the settlement and, (5) the trial court abused its discretion when it denied the motion to amend the answer and assert a cross-claim, and (6) the trial court abused its discretion when it denied the motion for leave to file a third-party complaint against Leonard. In the cross-appeal, Leonard argues that the settlement agreement includes them as well as Hazlett and the Murphy Partners. We affirm the trial court's ruling that the settlement was in good faith, and we find that the agreement includes Leonard. We consider the cross-appeal first inasmuch as the issues raised in the appeal apply to Leonard as well as the other appellees.

## CROSS–APPEAL

Leonard argues that there was a good faith determination made by the trial court as a result of the Rule 16.1 hearing that the settlement agreement included them. A reading of the transcript of the hearing on the Rule 16.1 motion supports this contention.

Rule 16.1(a) provides in part: "In any action where it is alleged that two or more parties are joint tortfeasors, and a settlement is entered into by any of the parties to the action, the court, *upon petition of any party*, shall make a formal determination whether the settlement is made in good faith." (Emphasis supplied) The rule is clear. Any party to a settlement can petition the court; there is no requirement that all parties to a settlement agreement join in the petition. The petition of any party places the agreement before the court and when the court makes a good faith determination, it is applicable to all parties to the agreement.

■ Here, Hazlett and the Murphy Partners petitioned the court for a good faith determination. At the hearing conducted on the petition, counsel for Barmat and for the Murphy Partners specifically stated to the court that Leonard was included in the settlement. Hochuli's counsel stated that he was not aware beforehand that the agreement included Leonard. However, over one year earlier, he had been notified by counsel for Barmat that the settlement agreement called for "a dismissal with prejudice of all defendants including David Leonard." We also find that the court considered Leonard to be included in the agreement. In ruling on Hochuli's motion to file a third-party complaint against Leonard, the court denied the motion "because of this Court's prior determination of good faith acts as a bar to contribution claims." We hold that the settlement agreement included Leonard, and we address Hochuli's arguments on appeal as they apply to Leonard as well as Hazlett and the Murphy Partners.

## APPEAL

■ Appellants first argue that the standard to be used by the trial court in its determination of whether a settlement is in good faith should be whether the amount settled for is within the "reasonable range" of the settling tortfeasor's proportionate share of comparative liability for the plaintiff's injuries, citing *Tech–Built, Inc. v. Woodward–Clyde & Associates*, 38 Cal.3d 488, 213 Cal.Rptr. 256, 698 P.2d 159 (1985). This standard is contrasted with the "tortious conduct" standard wherein the trial court examines the settling parties' conduct to determine if it was tortious or wrong. See generally *City of Tucson v. Superior Court*, 161 Ariz. 441, 778 P.2d 1337 (1989) (discussing both standards). There is no indication in the record what standard the trial court used in determining that the settlement here was made in good faith. We believe, however, that the result would be the same regardless of the standard used.

There is nothing in the record to indicate, nor have appellants argued, that the settling parties acted in a fraudulent or tortious manner during their negotiations. If the "reasonable range" measurement is used, as urged by appellants, we believe the trial court could properly find that the settlement was made in good faith. The plaintiff in the underlying tort action agreed to settle with Barmat for the amount of her insurance coverage, $300,-000. The insurance company agreed to the settlement but, before payment could be made, became insolvent. The Arizona Guaranty Fund replaced the insurance company. The plaintiff made the same offer to Edward Hochuli, who was retained by the Fund to represent Barmat. The offer called for the Fund to pay the statutory limit of $100,000, with the plaintiff collecting the remaining amount from the receiver winding up the affairs of the insurance company. Hochuli recommended to the Fund that the offer be rejected, and it was. The offer to settle was repeated and again rejected by the Fund on Hochuli's advice, in spite of the urging of Barmat's personal attorney, Leonard, to accept the offer. A judgment was entered against Barmat for $2.9 million. After this, the plaintiff again offered to settle for the $300,000 originally agreed to. This offer was also rejected. Acceptance of any of the offers to settle would have eliminated this malpractice action. The trial court could have concluded that Hochuli was responsible for the judgment entered against Barmat.

Appellants argue that the finding of good faith cannot apply to Leonard because the agreement did not require any payment from Leonard to Barmat. Early in the settlement negotiations between Barmat and Hazlett and the Murphy Partners, it became clear that the insurance carrier for these defendants would not settle with Barmat unless there was a release of Hazlett and the Murphy Partners by Leonard. For Barmat to receive the money from the carrier, she had to procure Leonard's release of Hazlett and the Murphy Partners. In consideration, Leonard agreed not to file an action against Hazlett and the Murphy Partners for malicious prosecution in connection with their filing the third-party complaint, not to seek attorney's fees and

not to seek reimbursement for his increased malpractice insurance premiums as a result of being brought into this action. The quid pro quo for that release was the release from liability of Leonard by Barmat, and the dismissal of the third-party complaint by Hazlett and the Murphy Partners.

■ We reject the argument that a third-party defendant cannot settle with the plaintiff because no claim has been made by the plaintiff against the third-party defendant. A third-party defendant should have the opportunity to evaluate his potential exposure and buy his peace if possible. *Widson v. International Harvester Co., Inc.,* 153 Cal.App.3d 45, 200 Cal.Rptr. 136 (1984).

When the first set of interrogatories was propounded in the tort action, Hazlett did not respond. Leonard was not aware that discovery had commenced and that the interrogatories had not been answered. A second set of interrogatories was sent to Hazlett. There again was a delay in responding. When Leonard learned of the delay, he intervened. The record indicates that he advised Mr. Barmat to exercise his Fifth Amendment right to remain silent and not answer certain interrogatories because of the possibility of criminal action being brought against him for the same incident that gave rise to the tort action. The exercise of his Fifth Amendment right by Mr. Barmat was challenged by the plaintiff. Before the court could rule on the matter, Mr. Barmat died. The court struck the answer as a sanction, and after the settlement offers were rejected by Hochuli, entered the default judgment which triggered this malpractice action. Leonard's advice to his client was given in fulfillment of his professional responsibility to represent and advise his client. If his advice was erroneous, it bore little responsibility for the ultimate judgment against Barmat.

■ Appellant next argues that the burden of proving that a settlement was executed in good faith should be on the settling parties and not on those who are challenging the settlement, relying on *United Services Auto. Ass'n. v. Morris,* 154 Ariz. 113, 741 P.2d 246 (1987). There the court placed the burden of proof on the insured who independently settled a claim and was seeking indemnity from the insurer. We find that case inapposite. We first note that indemnity and contribution are not the same. *City of Tucson,* supra. The supreme court in *Morris* also noted that insurers are seldom parties to the lawsuit settled by the insured and have not had the opportunity to litigate damages. The opportunity for a collusive settlement is much greater when the parties to the settlement are plaintiff and defendant and defendant receives a covenant not to execute.

In most settlements, the settling parties negotiate at arms length. The plaintiff tries to obtain as much as possible because if the remaining defendants successfully place the blame for the injury on the settling defendants, plaintiff will receive nothing more. Settling defendants in a contribution situation have the obvious incentive to pay as little as possible, because they cannot seek contribution from the remaining defendants nor will they receive any part of plaintiff's future recovery.

In Arizona, the law is that the party seeking to void a settlement and release of a joint tortfeasor has the burden of proving its invalidity. *State Farm Fire and Cas. Co. v. Rossini,* 14 Ariz.App. 235, 482 P.2d 484, vacated on other grounds, 107 Ariz. 561, 490 P.2d 567 (1971). Once the settling party introduces proof of the settlement and the amount thereof, the burden shifts to the party challenging the settlement to "show that the amount paid by the claimant in settlement was not paid in good faith ..." 18 Am.Jur.2d, Contribution § 127 at 130 (1985). Accord *Wagoner v. Mountain Savings & Loan Assoc.,* 311 F.2d 403 (10th Cir.1962); *Wasmund v. Metropolitan Sanitary Dist.,* 135 Ill.App.3d 926, 90 Ill.Dec. 532, 482 N.E.2d 351 (1985); *Dawes v. Elliston,* 369 S.W.2d 285 (Mo.App.1963). We note that other jurisdictions that have adopted the Uniform Contribution Among Tortfeasors Act (UCATA) place the burden on the challenging party to prove lack of good faith. *Home Ins. Co. v. Advance Mach. Co.,* 443 So.2d 165 (Fla.App.1983);

*O'Connor v. Pinto Trucking Serv. Inc.,* 149 Ill.App.3d 911, 103 Ill.Dec. 242, 501 N.E.2d 263 (1986). We see no reason to deviate from Arizona precedent and require the settling party to prove good faith. We do not assume that parties to an agreement acted collusively. We presume that they acted in good faith and require the challenging party to prove a lack thereof.

■ Hochuli finally argues that good faith is an affirmative defense and therefore the parties asserting a good faith settlement should bear the burden of proof. This would add an unwarranted step to the good faith hearing. At such a hearing, the parties seeking a good faith determination are not asserting any defense. They have reached a settlement and are seeking the imprimatur of the court. The defendant challenging the settlement is the party raising the issue of bad faith.

Hochuli's third argument is that the trial court erred in denying their request to depose plaintiff's and settling defendants' counsel and their request to subpoena their files relating to the settlement negotiations. Appellants argue that they were denied due process by the trial court's refusal of their discovery requests, citing *Singer Co. v. Superior Court,* 179 Cal. App.3d 875, 225 Cal.Rptr. 159 (1986). We believe their reliance on *Singer* and the due process implications raised therein is misplaced. There, the non-settling tortfeasor was not a party to the action when the good faith determination was made and had no opportunity to contest that finding. The court in *Singer* stated that the party who wishes to challenge a good faith finding must be given notice and an opportunity to be heard. The court also permitted discovery of the amount of the settlement, documentation regarding the settlement, the financial condition of the settling defendants and their insurance coverage, and the extent of the settling defendants' involvement in the injury-causing incident. *Singer* does not support the proposition that the trial court here was required to order the depositions of opposing counsel nor access to their files.

■ Appellants had notice of the good faith hearing and had the opportunity to contest the requested good faith determination. Copies of all the relevant correspondence between the attorneys who negotiated the settlement were provided to Hochuli. The trial court did not deny discovery, it only precluded deposing the attorneys for the settling parties. The trial court is vested with wide discretion in matters of discovery and its decision will not be disturbed unless there is an abuse of discretion. *Rogers v. Fenton,* 115 Ariz. 217, 564 P.2d 906 (App.1977). We find no abuse of discretion.

■ Hochuli's final argument is that the trial court abused its discretion in approving the settlement. The first prong of this argument attacks the affidavit which accompanied the motion for a good faith determination. The claim is made that the affidavit "is devoid of any discussion about the factors which qualify the settlement as being made in good faith." The affidavit was executed by an experienced trial lawyer who stated that based on his experience in the legal community, the amount of the settlement was reasonable given the settling defendants' proportional share of liability. He also stated that the agreement was reached after arms-length negotiations and was not the result of collusion, fraud or tortious conduct aimed at injuring the interests of the non-settling defendants. In addition to the affidavit, the trial court heard testimony from all concerned on the issue of good faith. The judge who presided at the good faith hearing had been permanently assigned to this case for a period in excess of three years and was familiar with all the facts and claims which preceded the settlement agreement. We find *Greshko v. County of Los Angeles,* 194 Cal.App.3d 822, 239 Cal.Rptr. 846 (1987), cited by Hochuli, distinguishable. There, the affidavit stated that a settlement had been executed with certain defendants because there was no proof of their liability. No evidence supported the conclusion. In opposition, there was expert testimony that the intersection where an accident had occurred was of faulty design. The court held that it was error for the

trial court to find a good faith settlement without some facts to support the affidavits' conclusions. Here the court had before it all the details of the actions of the various attorneys in their representation of Barmat. To have included that information in the affidavit would have duplicated information already in the record.

Hochuli also argues that the amount of the settlement is not within the reasonable range of the settling defendants' liability. We disagree. As stated before, but for the refusal of Hochuli to accept the settlement offer, there would have been no malpractice action. Regardless of the conduct of Hazlett and the Murphy Partners, Hochuli's refusal to settle was the superseding proximate cause of Barmat's exposure. Hochuli's statement in the opening brief that "it is likely that a jury would apportion a majority, if not all, of the fault to the settling defendants" finds little, if any, support in the record. We find no abuse of discretion in the trial court's finding that the settlement was made in good faith.

Because the settlement was made in good faith, the trial court properly denied Hochuli's motion to amend the answer and assert cross-claims against Hazlett and the Murphy Partners and file a third-party complaint against Leonard.

Affirmed.

LIVERMORE and LACAGNINA, JJ., concur.