798 P.2d 374

**CITY OF TUCSON, Petitioner,**

**v.**

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF PIMA; Honorable John G. Hawkins, a Judge thereof, Respondents,**

**and**

**COTTONWOOD DEVELOPMENT CO., INC.; George P. Mehl Construction Co., Inc.; Bear Canyon Shopping Center: dba Cottonwood Properties Inc.; Cottonwood Development, Inc.; Bear Canyon Shopping Center, and/or George P.**

Mehl Construction Co.; Pima County, a governmental organization in the State of Arizona; Osborn, Petterson, Walbert & Assoc. Engineering and Surveying, an Arizona corporation; R.E. Miller Paving and Construction, Inc.; The Superior Court of Arizona, In and For the County of Pima; and John G. Hawkins, a Judge thereof, Real Parties in Interest.

No. CV–89–0236–PR.

Supreme Court of Arizona,
En Banc.

Sept. 18, 1990.

Kimble, Gothreau & Nelson by Michael P. Morrison, Michael J. Gothreau, Tucson, for petitioner.

Murphy, Goering, Roberts & Holt, P.C. by Michael F. McNamara, David L. Berkman, Tucson, for respondents.

## OPINION

FELDMAN, Vice Chief Justice.

This is an action in which one joint tortfeasor seeks contribution from another for amounts paid to the injured party. *See* A.R.S. § 12–2501 *et seq.* We granted review to determine whether a non-settling tortfeasor is bound by the amount of damages that the settling tortfeasors paid in "good faith" to obtain the injured parties' complete release of all defendants. *See* Rule 23, Ariz.R.Civ.App.P., 17B A.R.S. We have jurisdiction under Ariz. Const. art. 6, § 5(3), and A.R.S. § 12–120.24.

## FACTS

This case arises from an automobile accident and resulting actions for death and personal injury brought by various individuals (tort claimants) against the City of Tucson (City) and a number of other defendants. The tort claimants alleged that the City and the other defendants were negligent in designing, building, or maintaining a public street in Tucson.

In 1987, the tort claimants settled with all defendants except the City. In a January 19, 1987 minute order, the trial judge listed the terms of settlement, including the amount to be paid to each claimant and the portion thereof to be paid by each settling defendant. Those defendants petitioned the trial court for a formal determination that the settlement was made in "good faith." *See* Rule 16.1, Ariz.R.Civ.P., 16 A.R.S. (hereafter Rule 16.1). The City opposed that motion, but after considering the affidavits submitted, the trial court found the settlement was made in good faith. The tort claimants dismissed their actions with prejudice, giving a complete

release of *all claims,* thus also releasing the City from any further liability.

The settling defendants then brought an action against the City seeking contribution for those settlement amounts paid the tort claimants "in excess of [the settling defendants'] actual pro rata shares of potential liability." *See City of Tucson v. Superior Court,* 161 Ariz. 441, 442, 778 P.2d 1337, 1339 (Ct.App.1989); *see also* A.R.S. § 12–2501(B). The settling defendants moved for summary judgment, arguing that the trial court's finding that the settlement was made in good faith collaterally estopped the City from relitigating in the contribution action issues pertaining to the amount of damages sustained by each of the tort claimants. They further contended that the damage issues, together with the pro rata share "owed" by each tortfeasor, had been concluded by the good faith settlement. In the contribution action, therefore, the only question remaining to be litigated was the proportionate share of fault attributable to the City. When that percentage was determined and applied to the settlement amount, the product would be the sum the City owed for its contribution as a joint tortfeasor.

The trial judge granted the motion over the objections of the City and entered judgment for contribution against the City. The City then filed a special action[1] in the court of appeals, claiming the trial court exceeded its jurisdiction by precluding it from litigating the amount of damages sustained by the claimants. The court of appeals accepted jurisdiction of the special action and granted relief, holding that the trial judge had exceeded his authority by granting the settling defendants' motion for summary judgment. *City of Tucson,* 161 Ariz. at 442–43, 778 P.2d at 1338–39. The court held that the City was not precluded from contesting the amount of damages, even though the settling defendants had settled in good faith. The court stated that "[t]he issue of damages, like the issue

1. In Arizona, relief formerly obtained by writs of prohibition, mandamus or certiorari is now obtained by "special action." Rule 1, Arizona

Rules of Procedure for Special Actions, 17B A.R.S.

of liability, raises questions of fact which only the trier of fact may resolve" in the contribution action. *Id.* at 446, 778 P.2d at 1342.

The settling defendants then petitioned this court for review. Because the interpretation of the statutes is a matter of statewide importance and the issue one of first impression, we granted review. *See* Rule 23(f), Ariz.R.Civ.App.P., 17B A.R.S.

The sole issue before us is whether the trial court's Rule 16.1 finding of "good faith" precludes the City from disputing the amount of damages that were due to the tort claimants.

### CONTRIBUTION

■ Prior to 1984, Arizona law did not recognize an action for contribution among joint tortfeasors. *Holmes v. Hoemako Hospital,* 117 Ariz. 403, 405, 573 P.2d 477, 479 (1977); *see also* Note, *Denying Contribution Between Tortfeasors in Arizona; a Call for Change,* 1977 ARIZ.ST.L.J. 673. A negligent tortfeasor was liable to pay the entire damages and had no right to contribution from any joint tortfeasor. *See* Note, *supra,* 1977 ARIZ.ST.L.J. at 674. This regime changed in 1984 when the legislature both recognized the action for contribution between joint tortfeasors and enacted the doctrine of comparative negligence. *See* A.R.S. §§ 12–2501, 12–2505, and 12–2506.[2]

The legislature created an action for contribution with the following language:

A. ... [I]f two or more persons become jointly or severally liable in tort for the same injury ... there is a right of contribution among them even though judgment has not been recovered against all of them.

B. The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the

common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share.

\* \* \* \* \* \*

D. A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor ... in respect to any amount paid in a settlement which is in excess of what was reasonable.

A.R.S. § 12–2501. It is important to note that nothing in the statute purports to bind a non-settling defendant from litigating the three issues that determine its liability for contribution to a settlement, namely: (1) its liability for the tort (§ 12–2501(A)); (2) the pro rata shares of liability of both the party seeking contribution and the party alleged to be liable for contribution (§ 12–2501(B)); and (3) in the case of settlements, whether the amount the settling party paid was reasonable (§ 12–2501(D)).

■ The policy behind the Uniform Contribution Among Tortfeasors Act, upon which Arizona's contribution statute is based, is to encourage settlements. *See* Commissioner's Comment to section 1(d) of the Uniform Contribution Among Tortfeasor's Act, 12 U.L.A. § 1 (1959), Master Edition (1975). Once a tortfeasor discharges the entire obligation, he is entitled to contribution from the non-settling tortfeasors. Because the statute requires the settlement to be reasonable, it follows that the issues of damages as well as total liability may be litigated in the contribution action. *Id.; see also* S. Butler and G. Gage, *Comparative Negligence and Uniform Contribution: New Arizona Law,* 20 ARIZ. BAR J. 16 (1984) (defendants in a contribution action retain the right to challenge reasonableness of the amount of settlement as well as right to dispute liability to the plaintiff).

There being no express statement in the contribution statute, if the non-settling de-

---

**2.** In 1987, the legislature repealed § 12–2506 and enacted a new version of the statute that abolished the doctrine of joint and several liability of tortfeasors and provided, instead, that each joint tortfeasor shall be liable only for his or her percentage of fault. Laws 1987, Ch. 1, § 2, eff. Jan. 1, 1988. Of course, the abolition

of joint and several liability moots the question of contribution. The case before us, however, is one that arose before the applicability of the statute abolishing joint and several liability. Nothing in this opinion, therefore, reaches any question that might arise regarding the interpretation or validity of that statute.

fendant is to be bound by some form of issue preclusion, such a result must flow from something other than that statute. The preclusion claimed here arises from the trial court's finding that the settlement was made in good faith. This argument is based on the language of A.R.S. § 12–2504, which provides as follows:

> *If a release* or covenant not to sue ... *is given in good faith* to one of two or more [joint tortfeasors] both of the following apply:
>
> 1. It does not discharge any of the other tortfeasors from liability ... unless its terms so provide, but it reduces the claim against the others....
>
> 2. It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

(Emphasis added.)

The statute does not define the term "good faith" nor provide any mechanism by which its existence could be established. To accomplish the latter, the State Bar of Arizona proposed and this court adopted a rule that permits the trial court to make a "formal determination whether the settlement is made in good faith." Rule 16.1(a). Various subsections of the rule provide for an adjudicative procedure including the use of affidavits, filing of objections, and a hearing.

▪ In our view, neither A.R.S. § 12–2504 nor the rule promulgated to implement that statute is relevant to the issues in this case. By the express words of A.R.S. § 12–2504, the finding that a settlement was made in "good faith" is only relevant and necessary to discharge a settling tortfeasor from liability for claims by other joint tortfeasors seeking contribution from him. In other words, a settling joint

tortfeasor may raise the finding of "good faith" as a defense to a contribution action brought against him by other tortfeasors. It is not an element that a settling tortfeasor must show as a *sine qua non* to maintain his contribution action against non-settling tortfeasors.[3]

[5, 6] As the court of appeals pointed out, however, when a settling defendant brings a contribution action against a non-settling defendant, the issues are determined by A.R.S. § 12–2501, which established the right of action for contribution. The liability imposed by that statute "exists only in favor of a [defendant] who has paid more than his pro rata share of the *common liability,* and his total recovery is limited to the amount paid by him in excess of his pro rata share." § 12–2501(B) (emphasis added). Faith, good or bad, is not the test. The liability of the defendant in a contribution action is determined by the amount of the "common liability"—an amount representing the total damages caused by the negligence of all the defendants—and the degree of fault (the "pro rata share") attributable to each of the tortfeasors. This amount can be established either by verdict or through settlement.

▪ Where the amount of the common liability is "fixed" by a settlement rather than a verdict, subsection (D) limits the settling defendant's contribution recovery from a non-settlor by prohibiting recovery of "any amount paid in a settlement which is in excess of what was reasonable." § 12–2501(D). The term "reasonable" may have a distinct relationship to the term "good faith" and the question of good faith may have evidentiary value in determining reasonableness.[4] *See Tech–Bilt, Inc. v.*

---

3. We conclude, therefore, that we need not determine in this case which of two lines of authority is appropriate for determining whether a settlement was made in good faith. *See City of Tucson,* 161 Ariz. at 444, 778 P.2d at 1340; *Dompeling v. Superior Court,* 117 Cal.App.3d 798, 173 Cal.Rptr. 38 (1981) (recognizes presumption that settlements were fair and in good faith absent evidence of collusion or other improper or tortious conduct); *Tech–Bilt, Inc. v. Woodward–Clyde & Assocs.,* 38 Cal.3d 488, 213 Cal. Rptr. 256, 262–64, 698 P.2d 159, 166–67 (1985)

(adopting a test that requires ascertainment of a number of factors to determine whether a settlement fell within the "reasonable range" appropriate for the case and therefore was made "in good faith").

4. The *facts* pertaining to the motives or methods of settlement may be relevant. This does *not* mean the court's finding on the issue is admissible.

242

*Woodward–Clyde & Assocs.*, 38 Cal.3d 488, 213 Cal.Rptr. 256, 262–64, 698 P.2d 159, 166–67 (1985).

We believe, however, that "reasonable" is used in § 12–2501(D) as a term of limitation. The settling defendant may recover the amount paid in excess of "his pro rata share of the common liability"— common liability meaning here the amount of the settlement—or the amount that was "reasonable" to pay in settlement, whichever is *less*. Thus, even though a defendant has settled in "bad faith," he may be entitled to contribution, but his recovery is limited to what would have been "reasonable" in settling.

Of course, *in determining* what is reasonable the parties may offer evidence of the total damages sustained by the tort claimant. *See Ogle v. Craig*, 761 P.2d 722 (Alaska 1988). Other factors are also to be considered. *See Home Ins. Co. v. Advance Mach. Co.*, 443 So.2d 165, 168–69 (Fla.App. 1983) (objective factors to be considered *include:* extent of plaintiff's injuries; his past, present, and future medical expenses; and his age and ability to work. Subjective factors to be considered *include:* certainty of the tortfeasor being held liable; risks of going to trial; and chance that jury verdict may exceed the settlement offer).

We can conceive of no reason why the right of contribution in a case that has been settled should be different from, or more or less than, the right of contribution in a case that has been tried. The only distinction between the two situations is that in the latter, the total liability and pro rata share of the party seeking contribution have been established by judgment. In a case that has been settled prior to trial, the reasonableness of the settlement amount paid and the liability of the non-settling defendant must be established in an adversary proceeding, as must the "pro rata share of the entire liability" of the non-settling defendant.

This conclusion disposes of the settling defendant's claims. We agree with the court of appeals' disposition of the collateral estoppel issues. *City of Tucson*, 161 Ariz. at 444–45, 778 P.2d at 1340–41. We observe further that the settling defendant's preclusion claims must be rejected because the trial court's determination of good faith in the Rule 16.1 hearing was not necessarily a determination of the issues pertaining to the reasonableness of the settlement and the relative degrees of fault required to establish the contribution claim under § 12–2501. For the doctrine of collateral estoppel to be applied, the issue or fact to be precluded must have been the same issue or fact actually litigated. *See Chaney Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 573, 716 P.2d 28, 30 (1986); Restatement (Second) of Judgments § 27 (1982).

## CONCLUSION

The trial court erred in granting the settling defendants' motion for partial summary judgment. Under the statute, both the issue of reasonableness of the settlement and the issue of liability of the City were for the trier of fact.[5] The issues were not precluded and the grant of the motion exceeded the court's legal authority. The court of appeals' opinion is approved. The trial court's judgment is vacated. The case is remanded to the superior court for further proceedings in conformity with this opinion.

GORDON, C.J., and CAMERON, MOELLER and CORCORAN, JJ., concur.

---

5. The court of appeals also agreed with the City that it was deprived of the right to a jury trial on these issues. Although either party to litigation in the superior court is entitled to demand a jury trial as a matter of right, whether the case falls in equity or in law, *see Shaffer v. Insurance* *Co. of North America*, 113 Ariz. 21, 22, 545 P.2d 945, 946 (1976), in an equity case the verdict is merely advisory. *See Mozes v. Daru*, 4 Ariz.App. 385, 420 P.2d 957 (Ct.App.1966). We take no position at this time on whether a jury verdict in this case would be merely advisory.