OPINION
FROEB, Judge.
This is a review of a denial of a petition to reopen based on new, additional or previously undiscovered disability or condition. We find that the petitioner is precluded from reopening her claim for failing to comply with A.R.S. § 23-1023(C) and affirm the award of the Industrial Commission.
On March 24, 1976, petitioner Mary Ann Grinnell sustained injuries in a car accident in the course of and arising out of her employment with respondent employer, Ken Sewell, Inc. This accident gave rise to a claim against a third party. Petitioner filed both a claim for workers’ compensa *126 tion benefits and a tort action in negligence against the third party.
Petitioner received temporary benefits under the workers’ compensation statute, which were terminated September 3, 1976, with a finding of no permanent medical impairment or disability. Petitioner was subsequently granted reopening of her claim and she received additional temporary benefits until a Notice of Claim Status issued on August 30, 1978, again terminating temporary benefits and active medical care, finding no permanent disability.
On January 31, 1980, petitioner’s third party claim was settled, without notification of or approval by the carrier, for $36,-000.00.
A second petition to reopen filed January 23, 1980, was denied and became final. A third petition to reopen, filed March 27, 1981, was also denied. Following a hearing, the administrative law judge issued his Decision Upon Hearing and Findings and Award dismissing the petition to reopen for lack of jurisdiction. This petition for special action — Industrial Commission followed.
We are presented with two issues: 1) Is petitioner precluded from reopening her workers’ compensation claim because she settled the third party claim without approval of the carrier, in violation of A.R.S. § 23-1023(C)? See Hornback v. Industrial Commission, 106 Ariz. 216, 474 P.2d 807 (1970); 2) Is Hornback still applicable in light of statutory changes in A.R.S. § 23-1023(C)?
Resolution of the first issue requires an examination of Hornback v. Industrial Commission which sets forth the judicial interpretation of A.R.S. § 23-1023. In that case, the Arizona Supreme Court ruled that when a compensation claimant is injured by a third party and settles the claim against the third party without first obtaining approval of the insurance carrier, the employee is not entitled to reopen his workers’ compensation claim to seek a deficiency. Approval of the settlement is required by A.R.S. § 23-1023(C), ruled the court, which at the time pertinent to that case, provided as follows:
C. If the election is to proceed against such other person, the compensation fund or person shall contribute only the deficiency between the amount actually collected and the compensation provided or estimated by the provisions of this chapter for such case. Compromise of any claim by the employee or his dependents at an amount less than the compensation provided for shall be made only with written approval of the commission, or of the person liable to pay the claim.[1]
In response to the employee’s argument that the court’s ruling would prevent employees from seeking additional compensation for injuries which may reveal themselves years after the accident, the court stated:
We recognize that there may be significant differences between this situation and one in which an employee seeks to reopen a claim for a disability which did not become apparent until long after the settlement of the third party suit.
106 Ariz. at 221, 474 P.2d at 812.
Petitioner argues that after the settlement with the third party had been effectu *127 ated, her back condition deteriorated requiring another surgery including a spinal fusion. Furthermore, she developed a severe psychiatric dysfunction, diagnosed by her psychiatrist as dysthymic disorder (depressive neurosis). Both of these problems occurred in 1981, long after the third party claim was settled and, therefore, petitioner argues, her situation falls outside the rule espoused in Hornback, and within the exception recognized in that case, that allows for reopening of a claim for a disability that did not become apparent until after the third party settlement.
Respondents employer and carrier argue that there is no evidence in the instant record to distinguish this case from Horn-back and, thus, the administrative law judge correctly dismissed the third petition to reopen. Respondents argue that the exceptional situation envisioned by the court in Hornback which would not preclude reopening is one in which a condition arguably related to an industrial injury does not manifest itself until long after the approved settlement has been effected.
We agree with respondents that the facts in this case do not fall within the exception contemplated by the court in Hornback. As noted by the administrative law judge in his Decision and Findings and Award, with respect to the back condition, this petition to reopen is essentially the same as the second petition filed on January 23,1980, which preceded the settlement entered into on January 31,1980, and, thus, represents a condition envisioned at the time of the third party settlement.
A jurisdictional hearing was held before the Industrial Commission on October 6, 1981, during which petitioner and Dr. Martin, a neurosurgeon who treated petitioner and performed her second surgery, testified. Examining the testimony of these two witnesses, it is clear that petitioner’s additional back problems following the third party settlement, although perhaps constituting a worsening of her condition, do not constitute a disability “which did not become apparent until long after the settlement of the third party suit.” Hornback v. Industrial Commission, 106 Ariz. at 221, 474 P.2d at 812. Petitioner testified that her low back and upper back injuries have continued all along since 1978 up until the time of the hearing, in varying degrees of intensity. Dr. Martin testified that he performed the second surgery on petitioner in which he removed the disc at L4-5 and did a fusion. The original surgery, conducted by Dr. Frankel in 1979, consisted of a discectomy and laminectomy of the same disc. Dr. Martin explained that because the removal of the disc and fusion is a bigger operation than a laminectomy, many surgeons will not do a fusion during the first surgery. Dr. Martin further testified that it was impossible to know just when the additional disc pathology occurred, but that it could have occurred as early as the day following the first surgery in 1979.
Regarding petitioner’s psychological problems, she had been under psychiatric care for two years prior to psychiatrist Dr. Capp’s first interview in February of 1981, and her “tendency toward depression” had been noted by another psychiatrist. Dr. Capp stated in her deposition that petitioner’s depression had its onset approximately two years prior to the time she was first seen by Dr. Capp. She stated that petitioner did not begin to have suicidal thoughts until January of 1981, and that this signaled a worsening of the depression. Dr. Capp diagnosed petitioner as having a dysthymic disorder, which is depression of at least two year’s duration.
The administrative law judge correctly held that petitioner’s alleged psychiatric problems and disc pathology were medical facts known to petitioner and her former counsel at the time the third party settlement was effected without the carrier’s approval. These are the very conditions which the carrier would have evaluated to assess its liability for purposes of approving or disapproving the third party settlement. For this reason, they do not fall within the exception contemplated by the court in Hornback.
*128 Petitioner also argues that the purpose of A.R.S. § 12-1023(C) has been satisfied in this case. The carrier’s lien has been paid in full, the carrier has received the protection contemplated by the statute and Hornback (i.e., to preclude a settlement in an amount less than the carrier’s liability), and therefore, she argues, there is no longer any justification to punish petitioner by failing to entertain her petition to reopen.
We reject this argument for the same reason the administrativee law judge rejected it. If this reasoning were to prevail, the requirement that a settlement be approved by the insurance carrier would, in effect, be nullified since an injured employee could simply get around the statute by paying the lien at any time after the settlement and before filing a petition to reopen. The purpose of A.R.S. § 23-1023(C) is to prevent an employee from accepting too small a settlement and prejudicing the subrogation rights of the insurance carrier. Hornback v. Industrial Commission. Since petitioner failed to obtain the required approval, the purpose of the statute can only be satisfied by denying petitioner the right to reopen her claim for conditions that were known to her at the time of settlement.
Finally, petitioner argues that the carrier’s issuance of the October 20, 1980, Notice of Claim Status acknowledging satisfaction of its lien constituted tacit approval to the third party settlement. We-summarily reject this argument as having no basis in logic or reason.
Regarding the second issue raised in this appeal, petitioner argues that amendments to A.R.S. § 23-1023 since the 1961 injury date basis used in Hornback have changed the statute from an election of remedies statute to one in which the employee can pursue both workers’ compensation benefits and a third party tort claim. Because of these changes, argues petitioner, Hornback is no longer controlling.
Respondents argue that the changes in the statute do not affect the rationale of Hornback. The statute still requires written approval of third party settlements at an amount less than benefits under the Act. In the post-amendment situation, argue respondents, the carrier is just as much prejudiced by a settlement effected by the employee without carrier approval as existed in the pre-amendment situation.
We agree with respondents that the statutory changes in A.R.S. § 23-1023(C) are minor and have no effect on the rationale espoused in Hornback. The major changes affected were in subsections A and B of the statute. It is true that the employee may now pursue both a compensation claim as well as the third party claim, rather than make an election of remedies as previously required. This does not affect the fact, however, that should the employee pursue the third party claim, the insurance carrier is still liable for the difference between the amount actually collected from the third person and the benefits allowed under the Act. The statute still requires that a “[cjompromise of any claim by the employee ... at an amount less than the compensation and medical, surgical and hospital benefits provided for shall be made only with written approval of ... the person liable to pay the claim.” A.R.S. § 23-1023(C). This provision is to protect the insurance carrier by precluding a settlement in an amount less than the carrier’s liability, resulting in a deficiency claim against the carrier. This was exactly the rationale of the Hornback case and still applies to the statute as amended.
For the foregoing reasons, the award is affirmed.
CONTRERAS, P.J., and OGG, J., concur.

. The statute was amended by Laws 1968, 4th
S.S., ch. 6, § 38 eff. Jan. 1, 1969, and now reads: C. If he proceeds against such other person, compensation and medical, surgical and hospital benefits shall be paid as provided in this chapter and the insurance carrier or other person liable to pay the claim shall have a lien on the amount actually collectable from such other person to the extent of such compensation and medical, surgical and hospital benefits paid. This lien shall not be subject to a collection fee. The amount actually collectable shall be the total recovery less the reasonable and necessary
expenses, including attorneys’ fees, actually expended in securing such recovery. The insurance carrier or person shall contribute only the deficiency between the amount actually collected and the compensation and medical, surgical and hospital benefits provided or estimated by the provisions of this chapter for such case. Compromise of any claim by the employee or his dependents at an amount less than the compensation and medical, surgical and hospital benefits provided for shall be made only with written approval of the compensation fund, or of the person liable to pay the claim.