984 P.2d 565

Eric A. BOHN, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Donald Daye & Zonya Daye, husband and wife, dba Turquoise Construction, Respondent Employers,

Special Fund Division/No Insurance Section, Respondent Party in Interest.

No. 1CA–IC 97–0078.

Court of Appeals of Arizona, Division 1.

Jan. 19, 1999.

Review Granted Sept. 21, 1999.

Bill Stephens, P.C. by Bill Stephens, Phoenix, Attorneys for Petitioner.

Anita R. Valainis, Chief Counsel, The Industrial Commission of Arizona, Phoenix, Attorney for Respondent.

The Industrial Commission of Arizona, Special Fund Division, No Insurance Section by Paula R. Eaton, Phoenix, Attorneys for Respondent Employers and Respondent Party in Interest.

## OPINION

LANKFORD, Judge.

¶ 1 Petitioner ("Bohn") brought this special action petition seeking review of an Arizona Industrial Commission ("Commission") award and decision upon review. The Commission decided that by settling a third-party claim without written approval from the Special Fund, Bohn had forfeited workers' compensation. Relying on *Macaluso v. Industrial Comm'n*, 181 Ariz. 447, 891 P.2d 914 (App. 1994), *review vacated as improvidently granted*, 185 Ariz. 5, 912 P.2d 9 (1996), we affirm the award and decision upon review.

¶ 2 This matter began when Bohn timely filed a workers' compensation claim for an August 1992 accident. Respondent Employers (the "Dayes"), an uninsured marital community, denied that they employed Bohn. The No Insurance Section of the Special Fund Division of the Commission ("Special Fund") denied the claim. *See generally* Ariz. Rev.Stat. Ann. ("A.R.S.") § 23–907(B) (Supp. 1997).

¶ 3 At the hearings which followed, an Administrative Law Judge ("ALJ") denied the claim. She found that although the Dayes had employed Bohn when he was injured, Bohn was intoxicated to such a degree that he had abandoned his employment. Bohn requested special action appellate review of this award.

¶ 4 While his special action was pending, Bohn settled a civil claim for $16,500. This third-party claim against the owners of the home at which he was working when injured sought damages for the same injuries as those for which he claimed workers' compensation.

¶ 5 This Court then issued a memorandum decision setting aside the ALJ's denial of compensability. After remand to the Commission, the Dayes were no longer represented and apparently had left Arizona. The Special Fund and Bohn agreed that the only issue to be adjudicated was "compensability" and that a hearing *de novo* would be unnecessary. Another ALJ issued an award for a compensable claim.

¶ 6 The Special Fund issued notices determining Bohn's average monthly wage and terminating temporary disability status effective March 1, 1993, without permanent disability. Bohn protested both determinations. At the hearing, the Special Fund asserted for the first time that Bohn had forfeited compensation by settling the third-party complaint without proper approval. *See generally* A.R.S. § 23–1023(A) (1995). The ALJ

ruled that the Special Fund had not properly raised noncompliance with the statute.

¶ 7 In support of its assertion that Bohn settled his third-party claim without approval, the Special Fund filed Bohn's counsel's letter of March 1, 1996. In that letter, Bohn's counsel informed the Commission that Bohn had resolved his claim against the homeowners in March 1994. In a post-hearing memorandum, Bohn represented that the Dayes' counsel had approved the third-party settlement on or about March 14, 1994. Bohn's counsel provided no additional documentation concerning the third-party settlement.

¶ 8 The Special Fund issued a notice of forfeiture of workers' compensation benefits "due to an unauthorized third-party settlement." Bohn requested a hearing. After an unrecorded pre-hearing conference, the parties submitted memoranda in lieu of a hearing. The only document that Bohn submitted concerning the third-party settlement was the letter of March 1, 1996.

¶ 9 The ALJ then issued an award finding a forfeiture. She determined that the value of Bohn's workers' compensation claim was at least $24,618.45. She also found that (1) the parties had stipulated that the Dayes had approved the third-party settlement; (2) the Special Fund had not stipulated that this approval was in writing; and (3) Bohn had not submitted any evidence of written approval. The ALJ concluded that A.R.S. section 23–1023(C) required written approval by the Special Fund. By settling without the Special Fund's written approval, Bohn had forfeited his workers' compensation benefits.

¶ 10 On administrative review, the ALJ corrected technical errors but otherwise affirmed her award. Bohn then brought this special action.[1] We have jurisdiction pursuant to A.R.S. sections 12–120.21(A)(2) (1992) and 23–951(A) (1995).

---

1. After Bohn filed this petition, the Special Fund issued a "Final Award" determining that the Dayes were liable to repay the Special Fund $8681.37 for medical bills and temporary disability compensation paid on Bohn's behalf, plus the statutory penalty. A bankruptcy attorney for Mr. Daye filed a letter with the Commission repre-

senting that Mr. Daye's debt relating to Bohn's industrial injury claim had been discharged on May 25, 1995. Although both documents are included in the certified record, we cannot rely on them because our review is limited to the evidence that the ALJ considered. *See, e.g., Co-*

¶ 11 When reviewing a compensation award, we must affirm if the evidence supports it by any reasonable theory. *Carousel Snack Bar v. Industrial Comm'n,* 156 Ariz. 43, 46, 749 P.2d 1364, 1367 (1988). We view the evidence in the light most favorable to sustaining the Commission's award. *Perry v. Industrial Comm'n,* 112 Ariz. 397, 398, 542 P.2d 1096, 1097 (1975).

¶ 12 On review, Bohn contends that the Special Fund failed to properly raise noncompliance with A.R.S. section 23–1023(C). He also contends that he complied with the statutory requirement. For the reasons that follow, we affirm the award.

¶ 13 We begin with some general principles of workers' compensation claims. An employee of an uninsured employer may elect to pursue a civil action against the employer or to file a workers' compensation claim. *See* A.R.S. §§ 23–907(A),(B). If an employee files a compensation claim, it is processed like any other such claim. *See* A.R.S. § 23–907(B). When an award becomes final, the Commission must pay the employee from the Special Fund. *See id.* The uninsured employer is liable to the Special Fund for the compensation payments and a statutory penalty upon receiving notice of the amount. *See* A.R.S. § 23–907(C). The payments from the Special Fund "act as a judgment against" the uninsured employer.[2] *Id.*

¶ 14 An employee entitled to workers' compensation may pursue a civil action against certain third parties who tortiously injured the employee. *See* A.R.S. § 23–1023(A). If an employee pursues a civil action, the employee still is entitled to workers' compensation, but the "insurance carrier or other person liable to pay the [workers' compensation] claim" has a lien on the employee's entire net recovery from the third-party to the extent of the workers' compensation paid. *See* A.R.S. § 23–1023(C); *Liberty Mutual Ins. Co. v. Western Casualty & Surety Ins. Co.,* 111 Ariz. 259, 262–63, 527 P.2d 1091, 1094–95 (1974).

¶ 15 An employee cannot settle a third-party claim for less than the compensation and medical benefits provided without *written approval* from either the compensation fund or the person liable to pay the claim. *See* A.R.S. § 23–1023(C). Settling without this statutory approval results in a forfeiture of workers' compensation benefits. *See Hornback v. Industrial Comm'n,* 106 Ariz. 216, 219–20, 474 P.2d 807, 810–11 (1970) (interpreting predecessor statute); *see also Grinnell v. Industrial Comm'n,* 139 Ariz. 124, 128, 677 P.2d 287, 291 (App.1983) (concluding that *Hornback* continued to apply after the 1968 amendment to A.R.S. section 23–1023); 6 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 74.17(a), at 14–428 (1998) (describing the "familiar rule" that settlement without the required consent results in forfeiture of future compensation).[3]

¶ 16 This Court recently addressed the applicability of A.R.S. section 23–1023(C) to a claim involving both an uninsured employer and a settlement that occurred while the claimant was protesting the Special Fund's denial of compensability. *See Macaluso,* 181 Ariz. at 448–49, 891 P.2d at 915–16. In *Macaluso,* while awaiting a hearing on compensability, the claimant settled a third-party claim without the Special Fund's approval. *Id.* After an award for a compensable claim, the claimant was not paid benefits and requested a hearing. The ALJ determined

*wan v. Industrial Comm'n,* 18 Ariz.App. 155, 158, 500 P.2d 1143, 1146 (1972).

**2.** Before 1968, an uninsured employer was solely liable for its employee's claims for workers' compensation. *See, e.g.,* Ariz.Code 1939, Supp.1952, § 56–1231 (repealed 1968). In 1968, the statute (now codified as A.R.S. section 23–907) was amended. Although an uninsured employer remained liable for workers' compensation claims, if an employer failed to pay within ten days after notice of an award, the Commission had *discretion* to pay the benefits "out of the special fund created by section 23–1065...." 1968 Ariz. Sess. Laws 998, 1015. If the Commission exercised its discretion to pay compensation, then it had a claim against the uninsured employer. *Id.* In 1973, A.R.S. section 23–907 was amended again. It required the Commission to pay benefits whenever an uninsured employer failed to pay awarded benefits within ten days. *See* 1973 Ariz. Sess. Laws 924, 931–32. In 1977, the Legislature enacted the current version of section 23–907. 1977 Ariz. Sess. Laws 496, 497–99.

**3.** Larson identifies twenty-four states that have statutes requiring consent. *See* 10 Larson & Larson, *supra,* app. C, tbl. 21, at 574.42.

that the claimant had forfeited benefits. *Id.* We affirmed this determination, concluding that compliance with A.R.S. section 23–1023(C) required written approval by the Special Fund. *Id.*

¶ 17 We now apply these general principles and *Macaluso* to Bohn's appeal. Notwithstanding A.R.S. section 23–1023(C), Bohn contends that Special Fund approval was unnecessary. When Bohn settled the third-party claim in March 1994, the Special Fund had denied compensability, an ALJ had affirmed an award denying compensability, and only the Dayes were actively participating in the appellate review of this denial. Accordingly, Bohn contends, the Special Fund lacked "standing or interest" in the third-party claim and its approval was not required.

¶ 18 We hold that approval was necessary. Bohn's case closely resembles *Macaluso*. In both cases, the claimants filed workers' compensation claims and were protesting denials of compensability when they settled third-party claims. Although the claimant in *Macaluso* prevailed on compensability sooner than did Bohn, the operative facts are identical: "[O]nce Macaluso filed a claim for workers' compensation benefits, that claim came under the jurisdiction of the Industrial Commission and he was bound by the provisions of the Workers' Compensation Act. . . ." *Macaluso*, 181 Ariz. at 449, 891 P.2d at 916. Bohn's compliance with the written approval requirement of A.R.S. section 23–1023(C) was required.

¶ 19 Bohn also argues that the Special Fund's approval was unnecessary because the Special Fund failed to prove that the third-party settlement was "less than the compensation and medical, surgical and hospital benefits provided for. . . ." A.R.S. § 23–1023(C). To the contrary, the ALJ found that the value of Bohn's workers' compensation claim was at least $24,618.45, and the record supports this finding. The value of the compensation claim exceeded the amount of the third-party settlement.

¶ 20 Bohn also contends that the Special Fund is precluded from raising noncompliance because it did not assert it at the compensability stage of the claim. In response, the Special Fund argues that Bohn's preclusion argument is an affirmative defense which he failed to raise before the Commission, thereby waiving it.

¶ 21 We reject Bohn's contention, but for different reasons than those suggested by the Special Fund. Upon its filing with the Commission, Bohn's claim fell within the jurisdiction of the Workers' Compensation Act. *See Macaluso*, 181 Ariz. at 449, 891 P.2d at 916. His fortuitous settlement with a third party before the Special Fund made a final determination of compensability did not remove his claim from the jurisdiction of the Act. Thus, Bohn was bound by the Act's provisions.

¶ 22 In addition, nothing compelled the Special Fund to assert noncompliance any sooner than it did. Although the Special Fund had denied compensability, this determination was not final because Bohn sought special action review in this Court. The Special Fund's obligation to assert noncompliance with A.R.S. section 23–1023 was not triggered until the claim was finally determined compensable.[4] *See generally* A.R.S. § 23–1023 (referring to an employee who is "entitled to compensation"). Once Bohn's claim was found compensable, the Special Fund promptly asserted noncompliance.

¶ 23 *Macaluso* is dispositive on these facts. As did the claimant in *Macaluso*, Bohn settled a third-party claim while disputing compensability. On corresponding facts, *Macaluso* held that the failure to obtain written approval of a third-party settlement violated A.R.S. section 23–1023(C), barring the claimant from receiving workers' compensation benefits. *Macaluso*, 181 Ariz. at 448, 891 P.2d at 915. Like the claimant in *Macaluso*, Bohn failed to acquire written approval from the Special Fund when he settled his third-party claim. Thus, just like the claimant in *Macaluso*, Bohn failed to comply with A.R.S.

---

4. The elements of a compensable claim are (1) an injury by accident, (2) arising out of and in the course of employment, (3) with a covered employer, (4) by a covered employee. *See, e.g.,* A.R.S. §§ 23–901(5) (1995), –902 (Supp.1997), –1021 (Supp.1997).

section 23–1023(C) and thereby forfeited benefits.

¶ 24 We now address the argument advanced in the dissent. The dissent treats the forfeiture issue as an open question. However, the supreme court established forfeiture as the penalty for violation of the approval statute in *Hornback*, 106 Ariz. at 219, 474 P.2d at 810. *Macaluso* then determined the specific question presented here: Does forfeiture apply when the compensation claim is yet unresolved? We thus break no new ground in our decision, and instead follow established precedent.

¶ 25 Nor do we find reason to upset the settled law by overturning *Macaluso*. The dissent proposes to allow unapproved settlements if they are "reasonable."[5] But the statute permits unapproved settlements only if the amount exceeds the compensation and benefits paid by the carrier. The dissent contemplates that a carrier would be bound in whole or in part by an unapproved settlement for less than the benefits amount, even though the statute requires its approval in such a case. This does not comport with the statute.

¶ 26 Even if the statute were amenable to the dissent's approach, we are unconvinced that the approach is superior. For example, the statute allows settlement for an amount greater than the compensation and medical benefits paid. The dissent proposes to replace that with a different standard: Settlement would be permitted whenever a carrier denies compensability, and would bind the carrier to the extent that the carrier cannot prove the amount to have been unreasonable. The legislative standard is clear because it requires only a straightforward comparison of the dollar amounts of the tort settlement and the compensation benefits. The dissent's standard is subjective. Moreover, the dissent proposes to place the burden on the carrier to show that settlement is unreasonable. This presumption that an unapproved

settlement binds the carrier undermines the statutory requirement of written approval.

¶ 27 We also reject the notion that a new approach is needed because forfeiture fails to serve the statutory purpose. The carrier clearly would be prejudiced were the claimant to settle without approval for less than the amount of benefits. In such a case, the carrier's subrogation rights are impaired: It is relegated to recovery of less than its benefit payments. That is the case whether the benefits have already been paid or are as yet unpaid. Thus, the protection of the carrier's subrogation rights is accomplished by applying the full force of the approval statute whether compensability is contested or not.

¶ 28 Nor can we agree that carriers obtain unfair or excessive settlement leverage by retaining their statutory right of approval when contesting compensability. While the dissent relies on the claimant's rights, the Legislature gave the carrier some rights too. By statute, the carrier may both contest compensability and approve third-party settlements. We are not entitled to upset the balance of interests between claimant and carrier that the Legislature has fixed. Even if we were so entitled, we have seen nothing in this case or any other that reveals that carriers are abusing their statutory rights to exact unfair settlements from claimants. On the contrary, our experience is that carriers rather freely approve third-party settlements.

¶ 29 The dissent also dismisses the protections that claimants have against abuses by carriers. Claimants are protected by the unfair claims processing statute, A.R.S. section 23–930 (Supp.1997), from the carrier's improper denial of compensability and withholding of approval of a tort settlement for the purpose of exercising what the dissent calls "extra leverage" to extract an unfair compensability settlement. Additional protection is afforded by damages in tort for bad faith. *See Hayes v. Continental Ins. Co.*, 178 Ariz. 264, 872 P.2d 668 (1994). The dissent's

**5.** Although the dissent does not propose it, the reasonabless standard logically would apply in all cases, not just those in which compensability is denied. A seriously injured worker with a claim for pain and suffering has a similarly great

desire or need to settle a tort claim. We therefore regard the dissent's proposal not as a narrow exception, but as the first inroad on the forfeiture rule.

prediction that these remedies will fail because claimants will not use them is speculation.

¶ 30 In summary, we cannot construe the statute as the dissent proposes. The statute is clear, and its application in this situation is established by *Macaluso.*

¶ 31 Bohn also argues that he did comply with A.R.S. section 23–1023(C) because he obtained the Dayes' oral approval to settle the third-party claim. Arguing that the Dayes are the "other person liable to pay the [workers' compensation] claim," Bohn asserts that he met the approval requirement. A.R.S. § 23–1023(C). However, Bohn never asserted, either in the proceedings below or in this appeal, that he obtained the *written* approval required by the statute.[6] The record includes no evidence of written approval.

¶ 32 *Macaluso* requires the Special Fund to approve a third-party settlement. *Macaluso,* 181 Ariz. at 448–49, 891 P.2d at 915–16. The current version of A.R.S. section 23–907(B) replaces an uninsured employer with the Special Fund as the source for workers' compensation awarded to a claimant.[7] Although an uninsured employer is liable to the Special Fund, the Special Fund may never recover the workers' compensation it paid a claimant. Consequently, the Special Fund, not an uninsured employer, is the "other person liable to pay the [workers' compensation] claim" under A.R.S. section 23–1023(C).

¶ 33 The ALJ correctly applied A.R.S. section 23–1023(C), *Macaluso* and *Hornback.* Bohn forfeited workers' compensation by settling his third-party claim without the Special Fund's written approval. Accordingly, we affirm the award and decision upon review.

¶ 34 Both parties requested attorneys' fees on appeal. However, neither party cited au-

thority which would allow an award of fees. We therefore deny both parties' request.

CONCURRING: SARAH D. GRANT, Judge.

FIDEL, Presiding Judge, dissenting.

¶ 35 When Claimant settled his third party claim, nineteen months had passed since the date of injury. During those months the Special Fund had denied compensability, asserting a forfeiture, though a different forfeiture than it now asserts. Specifically, the Fund contended that, before Claimant fell from the roof where he was working, he had become so intoxicated that he had abandoned the course of his employment.

¶ 36 This contention, as it turned out, was a red herring, yet a time-consuming and costly one. The matter went to hearing, the Industrial Commission affirmed, and eventually this court set the Commission's decision aside. We held that the evidence established neither impairment nor abandonment and that the allegation of intoxication lacked any causal relevance to an injury that occurred when a roof collapsed under Claimant's feet. We remanded for a new hearing on compensability.

¶ 37 Two months before our decision, however, Claimant gave the Fund a new ground for asserting forfeiture. Faced with extensive medical expenses and wage loss, his workers' compensation claim reduced to an appeal of uncertain outcome and duration, Claimant found a different source of compensation a third party personal injury settlement with the owners of the structure from which he fell. Before entering this settlement, Claimant received the approval of his employer,[8] but neither sought nor received the approval of the Special Fund.

¶ 38 The Fund now asserts, and the majority agrees, that by entering this settlement without the Fund's approval, Claimant for-

---

6. In fact, throughout the record, when citing A.R.S. section 23–1023(C), Bohn omitted any reference to the statutory requirement of "written approval."

7. This substitution avoids the delay and uncertainty that results when an uninsured employer pays workers' compensation to a claimant.

8. The parties stipulated before the Industrial Commission that Claimant had obtained the employer's approval but neither stipulated nor contested whether the approval was in writing.

feited workers' compensation. The majority deems it irrelevant that, as of the time of settlement, the Fund had denied compensability for nineteen months, that the matter had been adjudicated before the Industrial Commission, and that the Commission had upheld the Fund's denial. Even under such circumstances, according to my colleagues, the necessary consequence of an unapproved settlement is forfeiture. I would hold the contrary. Under such circumstances, a lesser consequence than forfeiture should apply.

¶ 39 The majority repeatedly stresses that a settling claimant is statutorily obliged to obtain the compensation provider's approval. I do not disagree. But the majority conflates the statutory requirement of approval with the penalty of forfeiture. They are not the same, nor do they derive from the same source.

¶ 40 Analysis begins with the statute: "Compromise of any claim by the employee or his dependents at an amount less than the compensation and medical, surgical and hospital benefits provided for shall be made only with written approval of . . . the person liable to pay the [workers' compensation] claim." A.R.S. § 23–1023(C).

¶ 41 The statute does not specify a penalty of forfeiture for a failure to secure the workers' compensation provider's approval for a third party settlement. *Id.* Nor does the corresponding Industrial Commission regulation. *See* Ariz. Admin. Code ("A.A.C.") R20–5–119. In notable contrast, the workers' compensation statute and its supporting regulation expressly impose a forfeiture of benefits during a worker's unapproved absence from the state for a period greater than two weeks. *See* A.R.S. § 23–1071(A); A.A.C. R20–5–115(B). A comparison of these provisions suggests that the Legislature and Commission did not regard a forfeiture as essential to the enforcement of A.R.S. § 23–1023(C). Had they done so, they could have written it directly into law, just as they did when adopting section 23–1071(A) and its supporting regulation.

¶ 42 Thus, the majority is mistaken when it states that, by restricting the use of forfeiture as a tool for the enforcement of section 23–1023(C), we would "upset the balance of interests between claimant and carrier that *the Legislature has fixed.*" (Emphasis added.) The penalty of forfeiture is not a statutory or regulatory device; it is a judicial device. Fashioned in *Hornback,* it need not be read as a universal penalty for *all* section 23–1023 violations, for it was adopted there to fit circumstances quite different than these.

¶ 43 Specifically, in *Hornback,* the claimant was attempting to reopen a workers' compensation claim that had previously been accepted, paid, and closed. Before filing the petition to reopen, without informing the compensation provider, the claimant settled his third party claim for an amount exceeded by the compensation benefits that he intended to seek upon reopening. 106 Ariz. at 220–21, 474 P.2d at 811–12. *Hornback* differs from this case because there, by the time of the settlement, the workers' compensation provider had accepted the claim, paid benefits, and acquired a lien. In adopting a rule to fit such circumstances, the *Hornback* court neither addressed nor contemplated whether to impose a forfeiture when, as here, the provider has engaged in a lengthy, and administratively successful, contest over the compensability of the claim. And because the *Hornback* court neither addressed nor contemplated the present circumstances, I disagree with the majority's conclusion that *Hornback* confines our remedial options to the single device of forfeiture in this case.

¶ 44 The majority also relies on *Macaluso,* a case indeed more comparable to ours, but one in which the court of appeals gave only summary consideration to the question that divides us here. There, before attending a Commission hearing on the Special Fund's denial of his compensation claim, the claimant entered a third party settlement without the Fund's approval. In rejecting the claimant's later assertion that he was not obliged to seek the Fund's approval, the *Macaluso* court offered only the following explanation:

This argument overlooks the fact that once Macaluso filed a claim for workers' compensation benefits, that claim came under the jurisdiction of the Industrial Commission and he was bound by the provisions of the Workers Compensation Act as well as

the Rules of Procedure for Hearings Before the Industrial Commission.

181 Ariz. at 449, 891 P.2d at 916. This explanation was inadequate to the issue, for it was circular, begging the question *what* the Act and Rules require. The conclusory discussion in *Macaluso* should not preclude a pointed inquiry into matters unexamined there.

¶ 45 To ask what the Act and Rules require returns us to the point that the penalty of forfeiture is specified in neither. *Compare* A.R.S. § 23–1023(C) and A.A.C. R20–5–119 *with* A.R.S. § 23–1071(A) and A.A.C. R20–5–115(B). It is a judicial penalty, and the true question before us is whether to extend it from the circumstances attendant in *Hornback* to the different circumstances presented in this case. The appropriate statutory question to be answered is whether it serves the statutory purpose to do so. I would hold that it does not.

¶ 46 The statutory purpose was defined in *Hornback:* "to prevent an employee from accepting too small a settlement and prejudicing the subrogation rights of the . . . carrier." *Id.* at 219, 474 P.2d at 810. To advance that purpose, it is neither necessary nor fitting to impose a forfeiture upon a claimant in the circumstances attendant here.

¶ 47 To impose a forfeiture is not fitting because it grants compensation providers excessive settlement leverage in circumstances where injured workers may be desperate for compensation from any source. Since 1975, compensability settlements have become common in Industrial Commission cases. *See Gray v. Industrial Comm'n,* 24 Ariz.App. 499, 539 P.2d 973 (1975), *approved per curiam,* 113 Ariz. 296, 552 P.2d 766 (1976). We judges should be cognizant of the impact of our case law in the market that has developed for the settlement of such claims. A compensation provider that contests compensability can withhold workers' compensation from an injured claimant until the contest is settled or resolved. To permit such a provider simultaneously to withhold third party settlement approval upon pain of for-

feiture, and thereby to frustrate the claimant's achievement of compensation from an independent source, is to grant the provider powerful extra leverage to impose a compensability settlement on its own terms.

¶ 48 The majority discounts such leverage because a claimant sufficiently aggrieved by a carrier's course of dealing can initiate proceedings for bad faith. Such proceedings may indeed provide recourse after the fact in occasional cases of clearly demonstrable abuse. From the standpoint of an injured worker who lacks both livelihood and compensation, however, it is unrealistic to suppose that so remote and uncertain a bird in the bush will relieve the pressure to accept a settlement that would place an immediate bird in the hand.

¶ 49 Turning to necessity, it is wholly unnecessary for the courts to extend such leverage to the providers or to impose so drastic a penalty upon the workers; the statutory goal can be achieved by far more moderate means than outright forfeiture. Instead, when a claimant, while engaged in a compensability contest, enters an unapproved third party settlement, the compensation provider may be given the opportunity, if compensability is later established, to prove to the Commission that the claimant settled the third party claim for an unreasonably low amount. To whatever extent the compensation provider can persuade the Commission that the settlement should have been greater, to that extent its credit should be enlarged. Absent such proof, the provider should be limited to the credit that would ordinarily arise from the settlement that the claimant made.[9]

¶ 50 The majority misapprehends my proposal when it argues that it would bind the carrier to an insufficient third party settlement or to a reimbursement or credit less substantial than it could otherwise reasonably achieve. To the contrary, the remedy that I propose would permit the compensation provider to protect its subrogation rights against *any* third party settlement that is too small. Thus, it would fully satisfy the statu-

---

9. Comparable proceedings in another context demonstrate that our legal process is competent to resolve contests over the reasonableness of settlements. *See* A.R.S. § 12–2501(D); *City of Tucson v. Superior Court,* 165 Ariz. 236, 798 P.2d 374 (1990).

tory purpose set forth in *Hornback.* *See Hornback,* 106 Ariz. at 219, 474 P.2d at 810.

¶ 51 Further, by devising a judicial remedy that wholly serves the statutory purpose by means less punitive than forfeiture, we would advance three fundamental principles of our law. The first is that the Workers' Compensation Act is a remedial act that must be liberally construed to achieve its underlying purpose. *See Special Fund Div. v. Industrial Comm'n,* 191 Ariz. 149, 152, 953 P.2d 541, 544 (1998). The second is to " 'prevent [claimants] and [their] dependents from becoming public charges during the period of disability,' " *see Safeway Stores v. Industrial Comm'n,* 152 Ariz. 42, 47, 730 P.2d 219, 224 (1986) (quoting *Prigosin v. Industrial Comm'n,* 113 Ariz. 87, 89, 546 P.2d 823, 825 (1976)), an objective served by eliminating unnecessary impediments to the settlement of claims. *Id.* The third principle "so elementary that no citations are necessary to sustain [it]"is that our "law abhors a forfeiture." *De Almada v. Sovereign Camp W.O.W.,* 49 Ariz. 433, 436, 67 P.2d 474, 475 (1937); *see also Foundation Dev. Corp. v. Loehmann's,* 163 Ariz. 438, 442–44, 788 P.2d 1189, 1193–95 (1990).

¶ 52 Given our traditional reluctance to judicially impose a forfeiture, given the absence of any legislative provision for a forfeiture in section 23–1023(C), and given that the legislative purpose can be achieved by a less drastic and more measured remedy, one might question whether it was necessary for the supreme court to have applied the penalty of forfeiture even in the circumstances of *Hornback.* That question is not ours to decide, however; this court may decide only whether to extend the penalty of forfeiture to the different circumstances of this case. The majority chooses to enlarge the sweep of forfeiture. I respectfully dissent.